William F. LINK, Appellant,

v.

Pamela ALVARADO, Appellee.

No. 04–95–00422–CV.

Court of Appeals of Texas, San Antonio.

Sept. 18, 1996.

Joanne M. Eakle, San Antonio, for appellant.

Lawrence L. Garcia, Law Office of Lawrence L. Garcia, San Antonio, for appellee.

Before RICKHOFF, HARDBERGER and DUNCAN, JJ.

## OPINION

DUNCAN, Justice.

Appellant, William F. Link, appeals by writ of error from a default judgment entered against him in a suit brought by his former wife to increase his child support obligation. We reverse and remand.

### PROCEDURAL HISTORY

Link, a sailor in the United States Navy, and Pamela Alvarado were married in Hawaii on February 23, 1993. Their daughter, Stormi Rae Link, who was born on February 1, 1993, suffers from "congenital multiple turgeon, a form of Escobar system." Due to a lack of fluid, the joints in Stormi's body are frozen, and her range of mobility is thus limited. Stormi has undergone several operations and will require several more. She currently receives physical, occupational, and speech therapy. Her parents were divorced in Hawaii on February 4, 1994, although the divorce decree was not signed until June 23, 1994. Link was ordered to pay child support in the amount of $240 a month.

On July 15, 1994, Alvarado, who had moved to San Antonio, filed a suit affecting the parent-child relationship in Bexar County seeking an increase in Link's child support obligation. Link, who was served by certified mail on July 22, 1994, filed a response on August 8, 1994 informing the court that he, as a sailor with the United States Navy, would be unable to attend court hearings in Texas. In his letter, Link cited the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C.App. § 520 (1990). A more detailed response was filed by Link on September 29, 1994. Answers to interrogatories were also filed by Link on September 29, 1994 and October 3, 1994.

Alvarado filed a motion for temporary orders and motion to set on August 17, 1994 and sent copies of these motions to Link by certified mail. A hearing on the temporary orders was held on the 30th of September. Link did not appear and was not represented by an attorney. He was nonetheless ordered to pay temporary child support of $600 per month starting on September 1, 1992 and attorney's fees. These temporary orders

were made final in a decree entered on October 3, 1994. Again, Link did not appear at this hearing and was not represented by an attorney. ·

On January 27, 1995, Link filed a combined motion for new trial and motion to set aside default judgment. Due to a clerical error, however, the motion was filed after the court's plenary power had expired. Pursuant to Rule 45(b), TEX.R.APP. P., Link filed a petition for writ of error on March 30, 1995.

### DISCUSSION

■ A writ of error must establish error on the face of the record and be brought within six months of the date the judgment was signed and be filed by a party to the suit who did not participate in the actual trial. TEX.R.APP. P. 45. Link's petition is timely, and he was a party to the suit. Therefore, the two questions before this court are whether Link participated in the actual trial of the case and whether error is apparent on the face of the record.

■ It is clear from the record that Link did not participate in " 'the decision-making event' that result[ed] in [the] judgment adjudicating [his] rights." *Texaco, Inc. v. Central Power & Light Co.*, 925 S.W.2d 586, 589 (Tex.1996). Link's sole participation consists of responding to Alvarado's suit and answering interrogatories. We therefore hold that Link did not participate in the actual trial of the case to a degree sufficient to deny him writ of error review. We next turn to the question of whether error is apparent on the face of the record, the subject of Link's first point of error.

Link argues that error is apparent on the face of the record because the original petition does not support a default judgment. Specifically, Link argues that the court erred in modifying a registered child support order in violation of section 159.611 of the Texas Family Code, which is part of the Uniform Interstate Family Support Act. TEX. FAM. CODE ANN. § 159.611 (Vernon 1996). Alvarado argues, on the other hand, that section

159.611 is inapplicable, and the controlling law is found in section 152.014, which is part of the Uniform Child Custody Jurisdiction Act. TEX. FAM.CODE ANN. § 152.014 (Vernon 1996).

■ The Uniform Child Custody Jurisdiction Act is the appropriate statute when matters of *child custody* are at issue. *See* TEX. FAM.CODE ANN. § 152.001 (Vernon 1996). But when a party seeks to modify a support order issued by another state, the Uniform Interstate Family Support Act applies. *See* TEX. FAM.CODE ANN. § 156.408(a) (Vernon 1996). Consequently, a party seeking to modify a support order from another state must establish jurisdiction pursuant to the Uniform Interstate Family Support Act.

Jurisdiction under the Uniform Interstate Family Support Act rests upon the "concept of continuing, exclusive jurisdiction to establish and modify the levels of child support due a particular child. Thus, once a court ... enters a support decree with jurisdiction, it is the only body entitled to modify it so long as it retains continuing, exclusive jurisdiction under the Act. Another state, while required by [the Uniform Interstate Family Support Act] to enforce the existing decree, has no power under that Act to modify the original decree or enter a support order at a different level," [1] as long as one of the parties remains in the issuing state. *See* TEX. FAM. CODE ANN. § 159.205 (Vernon 1996); Tina M. Fielding, *UIFSA: The New URESA,* 20 U. DAYTON L.R. 425, 461 (1994).

■ Pursuant to the Uniform Interstate Family Support Act, Texas courts are required to "recognize the continuing, exclusive jurisdiction of a tribunal of another state that issued a child support order under a law substantially similar to this chapter." TEX. FAM.CODE ANN. § 159.205(d) (Vernon 1996). Hawaii is such a state since it has adopted the Uniform Reciprocal Enforcement Support Act, HAW. REV. STAT. §§ 576–1–576–42 (1993), which is deemed the equivalent to the Uniform Interstate Family Support Act. UNIF. INTERSTATE FAMILY SUPPORT ACT, Pref-

---

1. John J. Sampson & Paul M. Kurtz, *UIFSA: An Interstate Support Act for the 21st Century,* 27    FAM. L.Q. 85, 88 (1993).

atory Note II A.3, 9 U.L.A. 255, 257 (West Supp.1996). Therefore, the Hawaiian court, as the issuing tribunal, has continuing, exclusive jurisdiction over the child support order involved in this case, and the trial court was without jurisdiction to modify that order.[2] *Thompson v. Thompson,* 893 S.W.2d 301 (Tex.App.—Houston [1st Dist.] 1995, no writ) (default judgment entered at hearing to modify child support order initially issued in Indiana). We thus agree with the First Court of Appeals that "[w]here the [Hawaii] court had continuing, exclusive jurisdiction over the subject matter of this suit, the Texas court was without jurisdiction to enter a default judgment." *Id.* at 302. Accordingly, we sustain Link's first point of error.

### CONCLUSION

Because Link's first point of error is dispositive, we do not address his remaining points of error. The petition for writ of error is granted, the default judgment is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

---

**2.** The trial court may modify the child support order (1) upon both parties' consent to Texas assuming jurisdiction, section 159.205(a)(2), Tex. Fam.Code Ann. (Vernon 1996), or, (2) after registration of the order, the trial court determines that "the child, the individual obligee, and the obligor do not reside in the issuing state." Tex. Fam.Code Ann. § 159.611(a)(1)(A) (Vernon 1996).