316 S.W.3d 78 (2010)
In the Interest of T.L. and S.L., Children.
No. 14-09-00179-CV.
Court of Appeals of Texas, Houston (14th Dist.).
June 10, 2010.
Rehearing Overruled July 8, 2010.
*79 John B. Worley, Michael D. Becker, Austin, for appellant.
Daniel Jake Lemkuil, Houston, for Ricky Leggett.
Panel consists of Chief Justice HEDGES and Justices YATES and BOYCE.

OPINION
ADELE HEDGES, Chief Justice.
This is a child support dispute involving two states: Texas and Louisiana. In 1992, a Texas court issued an order directing appellee, Ricky Leggett ("Father"), to pay child support. Years later, a Louisiana court modified the Texas order by suspending current support and canceling outstanding arrears. In 2007, appellant, the Office of the Attorney General of Texas ("OAG"), attempted to confirm arrears that had allegedly accrued under the 1992 Texas support order but had subsequently been cancelled by the Louisiana order. The trial court ultimately denied the OAG's request to confirm arrears, concluding *80 that Louisianaexercising its exclusive jurisdiction over the support orderhad cancelled all support owed under the 1992 Texas order. The trial court ordered that the OAG take nothing and assessed sanctions against the OAG for its collection efforts pending trial. The OAG now challenges two orders signed by the trial court in favor of Father. We reverse and remand.

I. BACKGROUND
In 1992, Brenda Leggett ("Mother") filed for divorce from Father, her then husband. The couple had three children from the marriage: two daughtersT.L. and S.L.and a sonK.L. Mother and the two daughters resided in Texas at the time of the divorce; Father and the son lived in Louisiana. On July 24, 1992, a Texas court signed a divorce decree granting the couple's divorce and ordering Father to pay child support for T.L. and S.L. The trial court found that Texas was not K.L.'s home state and therefore declined to issue an order with regard to the son. On the same day the divorce decree was signed, the trial court also signed a withholding order garnishing Father's income for the child support obligations created under the divorce decree.[1]

A. Louisiana's Enforcement And Modification Of The 1992 Texas Support Order
In July 1998, the 1992 Texas support order was registered with the state of Louisiana for purposes of enforcement.[2] On July 15, 1998, a Louisiana court issued a judgment (1) recognizing the 1992 Texas support order, (2) confirming outstanding arrears in the amount of $21,239.00 owed under the 1992 Texas support order, and (3) ordering Father to pay his continuing support obligation created under the 1992 Texas support order and an additional $80.00 a month on the arrears. The Louisiana court further ordered that the support payments be made through Louisiana's Department of Social Services.
The following year, Mother executed a written request for the OAG to stop the agency's support-collection services and to close the child support case. After receiving the request, the OAG forwarded the written request to Louisiana. On September 8, 1999, just weeks before the youngest daughter turned 18 years old, the Louisiana court issued an order "amending" its July 15, 1998 judgment by "by suspending the child support obligation and the medical support order effective 8/31/99 and canceling the arrears owed to the custodial parent through the Department of Social Services in the amount of $23,399.00."

B. The OAG's Attempt To Enforce The 1992 Texas Support Order
On February 14, 2007, the OAG sought to enforce the 1992 Texas support order by filing a motion to confirm arrears. In its motion, the OAG alleged that "on 07/24/92, the Court ordered Ricky Leggett to pay current child support of $320.00 per month, beginning August 1, 1992, and thereafter. . . . On 07/15/98, this order was registered in the State of Louisiana and arrears were determined to be $21,239.00." The OAG further alleged that Father now owedas of February 6, 2007$46,956.46 in arrears. Father responded to the motion with an original answer, a motion to dismiss, and a motion for sanctions, arguing *81 that the Louisiana court had suspended his support obligation as of September 1999 and had cancelled $23,399.00 in outstanding arrears owed at the time. According to Father, there were no arrears to be confirmed by a Texas court because Louisiana had cancelled all the arrears in 1999.
On January 11, 2008, the associate judge heard Father's motion to dismiss and for sanctions. The associate judge granted Father's motion to dismiss and denied his request for sanctions. After Father's motion to dismiss was granted, the OAG filed a motion for new trial and requested a hearing de novo before the presiding district judge. The district judge later heard the OAG's motion for new trial and the motion to confirm arrears. The district judge granted the OAG's motion to confirm and confirmed arrears in the amount of $42,904.28. Correspondingly, a new withholding instrument was issued on September 3, 2008, withholding $250.00 a month from Father's income.[3]
Father challenged the district court's order confirming arrears by filing a motion for new trial. On September 23, 2008, the trial court heard Father's motion and granted him a new trial; trial was set for January 5, 2009. In light of the trial court's ruling, Father requested the OAG to withdraw the September 2008 withholding instrument that was then garnishing $250.00 a month from Father's income. The OAG refused, contending that an administrative writ did not require court approval. On October 22, 2008, the OAG withdrew the September 3, 2008 withholding instrument and issued an administrative writ substantively identical to the September withholding instrument.
Seeking relief with the trial court, Father filed a motion requesting that the trial court (1) terminate the withholding instrument, (2) refund all monies paid under the withholding instrument, and (3) assess sanctions against the OAG for refusing to withdraw the withholding instrument after Father had been granted a new trial. On November 19, 2008, the trial court heard and granted Father's motion to terminate the October 2008 administrative writ. Specifically, the trial court signed an order on November 19, 2008 ordering (1) the OAG's immediate withdrawal of the administrative writ and any other form of withholding in effect, (2) the OAG's notification to the Social Security Administration to stop withholding Father's income immediately, (3) the OAG's refund of all funds paid by Father currently held by the OAG, and (4) a monetary sanction against the OAG in the amount of $1,000.00 for refusing to withdraw the writ at Father's request. The trial court further ordered that the $1,000.00 sanction be paid to Father's counsel by the January 5, 2009 trial date. No further collection efforts were made by the OAG.
On December 4, 2008, the OAG filed a motion for new trial on the November 2008 order and a motion to modify the same to extend the deadline to comply with the court's order regarding sanctions. According to the OAG, payment of the monetary sanction was required to go through a *82 "review and approval process" with the governor and the state comptroller, making it impossible for the OAG to pay by January 5, 2009. The trial court ultimately denied both motions.
On January 6, 2009, trial commenced on the OAG's motion to confirm arrears. The trial focused on whether (1) Louisiana had authority to amend the 1992 Texas support order by suspending support and canceling the arrears owed; or (2) Texas retained jurisdiction to enforce the 1992 Texas support order. Ultimately, the trial court denied the OAG's motion to confirm arrears, finding that Louisiana had jurisdiction to modify the 1992 Texas support order because Mother and Father had mutually agreed to modify support. The trial court also awarded Father an additional $1,000.00 in sanctions for the OAG's failure to comply with the November 2008 order. The OAG appealed the trial court's November 2008 orderterminating the administrative writ, refunding monies paid to Father, and assessing sanctionsand the January 2009 orderdenying the OAG's motion to confirm arrears and assessing additional sanctions.
In eight related issues, the OAG contends: (1) the trial court erred by rendering a take-nothing judgment on the OAG's motion to confirm arrears; (2) the trial court abused its discretion by terminating the administrative writ; (3) the OAG established as a matter of law that the arrearage owed was $50,167.63; and (4) the trial court erred by assessing sanctions against the OAG.

II. STANDARD OF REVIEW
An order regarding child support will not be overturned unless the trial court clearly abused its discretion. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex.1990); Chenault v. Banks, 296 S.W.3d 186, 189 (Tex.App.-Houston [14th Dist.] 2009, no pet.) (reviewing an enforcement order under an abuse-of-discretion standard). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. Worford, 801 S.W.2d at 109; Evans v. Evans, 14 S.W.3d 343, 345-46 (Tex. App.-Houston [14th Dist.] 2000, no pet.). A trial court does not abuse its discretion as long as some evidence of a substantive and probative character exists to support the trial court's decision. In re C.A.M.M., 243 S.W.3d 211, 214 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). However, a trial court's failure to analyze or apply the law correctly constitutes an abuse of discretion. Walker v. Packer, 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding); Hardin v. Hardin, 161 S.W.3d 14, 19 (Tex. App.-Houston [14th Dist.] 2004, no pet.).
Conversely, when there is a determination of subject matter jurisdictiona question of lawwe apply a de novo standard of review. In re G.S.G., 145 S.W.3d 351, 353 (Tex.App.-Houston [14th Dist.] 2004, no pet.); In re M.W.T., 12 S.W.3d 598, 601 (Tex.App.-San Antonio 2000, pet. denied); In re V.L.C., 225 S.W.3d 221, 226 (Tex. App.-El Paso 2006, no pet.).

III. LOUISIANA HAD JURISDICTION TO MODIFY THE 1992 TEXAS SUPPORT ORDER ONLY IF TEXAS LOST ITS CONTINUING, EXCLUSIVE JURISDICTION TO ENFORCE THAT ORDER
The OAG's first issue, in part, addresses Louisiana's jurisdiction to modify the 1992 Texas support order. The OAG contends that if the 1999 Louisiana order is construed to be unambiguous, the order is void because Louisiana had no subject-matter jurisdiction to modify the *83 1992 Texas support order.[4] When a party seeks to modify a support order issued by another state, the Uniform Interstate Family Support Act ("UIFSA") applies. See TEX. FAM.CODE ANN. § 156.408(a) (Vernon 1996); Link v. Alvarado, 929 S.W.2d 674, 676 (Tex.App.-San Antonio 1996, writ dism'd w.o.j.). Thus, a party seeking to modify a support order from another state must establish jurisdiction pursuant to the UIFSA. Link, 929 S.W.2d at 676.
Jurisdiction under the UIFSA rests upon the concept of continuing, exclusive jurisdiction to establish and modify the levels of child support due a particular child. See TEX. FAM.CODE ANN. § 159.205. Once a court having jurisdiction enters a support decree, that tribunal is the only one entitled to modify the decree so long as that tribunal retains continuing, exclusive jurisdiction under the UIFSA. See id. §§ 155.002-.003, 159.205-.206; see also Link, 929 S.W.2d at 676. Another state may be required by the UIFSA to enforce the existing support decree, but it has no authority under that Act to modify the original decree so long as one of the parties remains in the issuing state. See TEX. FAM.CODE ANN. § 159.205. Only if the issuing state no longer has a sufficient interest in the modification of its order may the responding state assume the power to modify it, as reflected in section 159.611. See id. § 159.611.
In this case, Texas acquired and retained jurisdiction over matters regarding the support of T.L. and S.L. by issuing the 1992 Texas support order. See id. § 155.001-.003. Louisiana acquired jurisdiction solely to enforce the 1992 Texas support order when that order was registered with Louisiana in July 1998. See LA. CHILD. CODE ANN. art. 1306.3 (1997). The Louisiana court's July 15, 1998 judgment comports with Louisiana's limited UIFSA role in enforcing the 1992 Texas support order. However, the Louisiana court's subsequent September 8, 1999 order "amending" the July 15, 1998 judgment purported to modify the 1992 Texas support order by suspending support and canceling outstanding arrears in the amount of $23,399.00.[5]
Louisiana, as the responding state under the UIFSA, could go beyond mere enforcement and assume jurisdiction to modify the 1992 Texas support order only if Texas lost its jurisdiction to enforce or modify that order. See TEX. FAM.CODE ANN. §§ 159.205, 159.611. The UIFSA establishes three circumstances under which Texas could lose its jurisdiction to enforce the 1992 Texas support order.[6] Section 159.205, which was in effect when the Louisiana court signed its September 8, 1999 order purporting to modify the 1992 Texas support order, provided in relevant part:
(a) A tribunal of this state issuing a support order consistent with the law of *84 this state has continuing, exclusive jurisdiction over a child support order:
(1) as long as this state remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or
(2) until all of the parties who are individuals have filed written consents with the tribunal of this state for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.
(b) A tribunal of this state issuing a child support order consistent with the law of this state may not exercise its continuing jurisdiction to modify the order if the order has been modified by a tribunal of another state under a law substantially similar to this chapter.
(c) If a child support order of this state is modified by a tribunal of another state under a law substantially similar to this chapter, a tribunal of this state loses its continuing, exclusive jurisdiction with regard to prospective enforcement of the order issued in this state and may only:
(1) enforce the order that was modified as to amounts accruing before the modification;
(2) enforce nonmodifiable aspects of that order; and
(3) provide other appropriate relief for violations of that order that occurred before the effective date of the modification.
TEX. FAM.CODE ANN. § 159.205(a)-(c) (Vernon 1996). Accordingly, Texas lost its continuing, exclusive jurisdiction to enforce the 1992 Texas support order under the UIFSA if (1) Father, and Mother, and the children who were the subject of the support order ceased to reside in Texas; or (2) Father and Mother each filed a consent "with the tribunal" of Texas reflecting their consent to Louisiana's assuming jurisdiction to modify the 1992 Texas support order. See id. § 159.205(a). Alternatively, Texas lost its continuing, exclusive jurisdiction to enforce the 1992 Texas support order if the order was modified by a tribunal of another state under a law substantially similar to chapter 159 of the Texas Family Code. See id. § 159.205(c).

A. Texas Did Not Lose Its Continuing, Exclusive Jurisdiction to Enforce the 1992 Texas Support Order Under Subsection (a)(1) Because Mother and One Child Still Resided in Texas
Under subsection (a)(1), Texas did not lose its continuing, exclusive jurisdiction to enforce the 1992 Texas support order if Father, or Mother, or the children who were the subject of the support order resided in Texas. The record reflects, and the parties do not dispute, that Mother and one child still resided in Texas. Accordingly, Texas did not lose continuing, exclusive jurisdiction to enforce the 1992 Texas support order under subsection (a)(1). See id. § 159.205(a)(1).

B. Texas Did Not Lose Its Continuing, Exclusive Jurisdiction to Enforce the 1992 Texas Support Order by Written Consent Under Subsection (a)(2)
Under subsection (a)(2), Texas lost its continuing, exclusive jurisdiction to enforce the 1992 Texas support order if Father and Mother each filed a consent "with the tribunal" of Texas reflecting their consent to Louisiana assuming jurisdiction to modify the 1992 Texas support order. See id. § 159.205(a)(2). The record contains the following evidence relevant to the written consent requirement: (1) Mother's written request filed with the OAG to "discontinue child support services" rendered by the OAG and to "withdraw from the office of the Attorney General's Child Support *85 Program"; (2) the 1999 Louisiana order reflecting that Louisiana was suspending Father's support obligation and canceling arrears based on a request by "the custodial parent and the State of Texas" to close the case; and (3) Father's testimony that he and Mother agreed to cancel support and outstanding arrears. The evidence in this record does not satisfy the statutory requirements necessary for Texas to lose its continuing, exclusive jurisdiction to enforce the 1992 Texas support order.
Subsection (a)(2) requires that both Mother and Father file a written consent "with the tribunal of this state." A "tribunal" under the UIFSA is defined as "a court, administrative agency, or quasi-judicial entity authorized to establish, enforce, or modify support orders or to determine parentage." TEX. FAM.CODE ANN. § 159.102(22) (Vernon 1996). Furthermore, the UIFSA provides that "[t]he court is the tribunal of this state." See id. § 159.102. In contrast, a "support enforcement agency" is an agency authorized to seek "enforcement of support orders or laws relating to the duty of support," "establishment or modification of child support," or "determination of the controlling child support order." Id. § 159.102(22). While the OAG is authorized to provide services seeking enforcement of support orders, the OAG does not have the independent authority to establish, enforce, or modify support orders. See id. § 231.101. The OAG, therefore, is not a "tribunal" under the UIFSA's definition. Consequently, Mother's written request to close the child support case was filed with a support enforcement agencythe OAG not a tribunal.
Furthermore, Mother's written request to close the case did not articulate consent for Louisiana to assume jurisdiction to modify the 1992 support orderthe document simply requested cessation of child support services rendered by the OAG and closure of the support case. Moreover, there is no evidence that Father filed a written consent to Louisiana assuming jurisdiction to modify the 1992 Texas support order in a Texas tribunal. See id. § 159.205(a)(2) (requiring each party who is an individual to file written consent). Accordingly, the subsection (a)(2) statutory requirements necessary for Texas to lose its continuing, exclusive jurisdiction to enforce the 1992 Texas support order and for Louisiana to assume jurisdiction were not satisfied.

C. Texas Did Not Lose Its Continuing, Exclusive Jurisdiction to Enforce the 1992 Texas Support Order Under Subsection (c)
Under the version of section 159.205 in effect in 1999, Texas also could lose its continuing, exclusive jurisdiction to enforce the 1992 Texas support order if that order was "modified by a tribunal of another state under a law substantially similar" to chapter 159 of the Texas Family Code. See id. § 159.205(c). Accordingly, Texas lost jurisdiction to enforce the 1992 support orderand thus was required to recognize the 1999 Louisiana modification orderif the 1992 order was modified under Louisiana law that was substantially similar to Texas law.
Both the Texas and Louisiana versions of the UIFSA in effect in 1999 provided that either state could modify an out-of-state support order if (1) all parties, including the child, do not live in the issuing state, the petitionera nonresident seeks modification, and the respondent is subject to the personal jurisdiction of the modifying state; or (2) all parties file written consent for another tribunal to assume jurisdiction to modify. See LA. CHILD. CODE ANN. art. 1306.11; TEX. FAM.CODE *86 ANN. § 159.611. At least two of the partiesMother and S.L.lived in Texas, the issuing state. Furthermore, as discussed above, there is no evidence of written consent having been filed by both Mother and Father for Louisiana to assume jurisdiction. Accordingly, under the UIFSA as adopted in both Louisiana and Texas, the circumstances here do not satisfy the statutory requirements for Texas to lose continuing, exclusive jurisdiction to enforce the 1992 Texas support order.
Because the statutory requirements for Texas to lose continuing, exclusive jurisdiction were not satisfied, any purported modification of the 1992 Texas support order by the September 8, 1999 Louisiana court order is void. In reaching this conclusion, we necessarily reject Father's argument that his and Mother's agreement to settle the arrears transferred jurisdiction to Louisiana. Father does not argue that this case satisfies the requirements of the UIFSA; rather, he contends that because he and Mother agreed to settle the arrears, Louisiana automatically assumed jurisdiction. The cases cited by Father for such a proposition are not relevant because they do not involve the UIFSA. The UIFSA does not permit a foreign tribunal such as Louisiana to modify a Texas child support order merely upon the agreement of the parties. Accordingly, Father and Mother's alleged agreement to settle arrears and Mother's request to close the case simply did not comply with the UIFSA. Therefore, Louisiana had no authority to modify the 1992 Texas support order.
Father further contends that the OAG is estopped from arguing Louisiana lacked jurisdiction because the OAGon the one handseeks to enforce the 1998 Louisiana order confirming arrears in the amount of $23,399.00 andon the other handdisputes Louisiana's authority to issue the 1999 order. Although the OAG refers to the $23,399.00 in arrears confirmed by the 1998 Louisiana order, the record reflects that the OAG sought to enforce the 1992 Texas support order, not the 1999 Louisiana order. Accordingly, Father's estoppel argument is without merit.
We recognize that basic principles of fairness are seemingly at odds with our disposition. The record reflects some type of understanding between Mother and Father to relieve Father of his support obligation, retrospectively and prospectively, in 1999. While we are sympathetic to Father's position, we are bound by the statutory mandates of the UIFSA. Because the UIFSA's statutory prerequisites were not satisfied, Louisiana did not obtain jurisdiction to modify the 1992 Texas support order.[7] Because the 1999 Louisiana order purporting to modify the 1992 Texas support order was entered without subject matter jurisdiction, the Louisiana order is void.[8]See Carroll v. Carroll, 304 S.W.3d 366, 368 (Tex.2010) (declaring judgment void by court lacking subject matter jurisdiction); Browning v. Placke, 698 S.W.2d 362, 363 (Tex.1985) (concluding that a judgment is void when the court had no jurisdiction over the subject matter or to enter the particular judgment). Accordingly, *87 the Louisiana order can provide no basis for the trial court to conclude, as it did in its findings of fact and conclusions of law, that: (1) Louisiana "terminated Ricky Leggett's obligation to pay further child support and medical support effective August 31, 1999," and (2) Father "owes no child support arrearages." Because Texas has jurisdiction to enforce the 1992 Texas support order, the trial court erred in denying the OAG's motion to confirm arrears. We sustain the portion of OAG's first issue arguing that Louisiana lacked jurisdiction to modify the 1992 Texas support order.

IV. ADMINISTRATIVE WRIT AND SANCTIONS
In reaching the conclusion that Texas had jurisdiction to enforce the 1992 Texas support order, we necessarily agree with the OAG's third issue: the trial court abused its discretion in its November 19, 2008 order by requiring the OAG to terminate the administrative writ. Subchapter F of chapter 158 of the Texas Family Code authorizes the OAG to issue an administrative writ to collect outstanding arrears. Specifically, section 158.501 provides in relevant part:
(a) The Title IV-D agency may initiate income withholding by issuing an administrative writ of withholding for the enforcement of an existing order as authorized by this subchapter.
TEX. FAM.CODE ANN. § 158.501 (Vernon 2008). Section 158.502 further provides in relevant part:
(a) An administrative writ of withholding under this subchapter may be issued by the Title IV-D agency at any time until all current support, including medical support, and child support arrearages, and the Title IV-D service fees authorized under Section 231.103 for which the obligor is responsible, have been paid.
Id. § 158.502(a). Having previously concluded that the Louisiana court did not have jurisdiction to modify the 1992 Texas support orderand thus Texas had jurisdiction to enforce the 1992 Texas support orderthe OAG was authorized to issue an administrative writ to collect child support arrears under subchapter F. Accordingly, the trial court abused its discretion by terminating the writ. We sustain the portion of OAG's third issue arguing that it was authorized to issue the administrative writ under subchapter F.
With respect to sanctions, the trial court assessed sanctions against the OAG pursuant to section 105.002 of the Civil Practice and Remedies Code, which provides in relevant part:
A party to a civil suit in a court of this state brought by or against a state agency in which the agency asserts a cause of action against the party, either originally or as a counterclaim or cross claim, is entitled to recover, in addition to all other costs allowed by law or rule, fees, expenses, and reasonable attorney's fees incurred by the party in defending the agency's action if:
(1) the court finds that the action is frivolous, unreasonable, or without foundation; and
(2) the action is dismissed or judgment is awarded to the party.
TEX. CIV. PRAC. & REM.CODE ANN. 105.002 (Vernon 2005). The trial court concluded in its findings of fact and conclusions of law:
10. The Office of the Attorney General served an administrative writ of withholding on the Social Security Administration while litigation was pending regarding the existence of the alleged arrearage.

*88 11. The Office of the Attorney General refused to terminate a withholding order after the Court granted a new trial and set aside the underlying order, and after a request by Ricky Leggett's attorney to do so.
12. The Office of the Attorney General filed an administrative writ pursuant to Texas Family Code § 158.501 on or about October 22, 2008 and Ricky Leggett contested said writ pursuant to Texas Family Code § 158.506.
13. The administrative hearing pursuant to Texas Family Code § 158.506 was conducted by telephone and the dispute as to the existence or amount of child support arrearages, if any, was not resolved.
14. The Office of the Attorney General filed said writ although litigation was pending regarding the existence of the alleged arrearage.
15. The administrative writ was frivolous and unreasonable.
According to the trial court's findings and conclusions, it determined that the administrative writ was frivolous and unreasonabletherefore warranting sanctionsbecause the OAG issued such writ while the existence of the alleged arrears was in dispute and not yet adjudicated. However, the statute does not limit its application to uncontested child support arrears. Rather, the administrative writ statute specifically allows a writ to issue at any time until all child support arrears are paid. See id. § 158.502(a). Thus, the issuance of the writ in this case was not frivolous or unreasonable simply because the arrearages were disputed and not yet adjudicated by the trial court.
Indeed, the very purpose of the administrative writ is to allow withholding when an allegation of arrearagesdisputed or undisputedis made by the OAG. The writ statute would be meaningless if no writ could issue unless the obligation is undisputed by the obligor before adjudication of arrearages. The statute specifically allows an obligor to contest the writ before the trial court, which may terminate the writ if there is no evidence of arrearages owed. Id. § 158.506. However, the mere fact of an obligor's disputewithout a determination of arrearages in his favordoes not invalidate an administrative writ under subchapter F. Accordingly, the trial court in this case abused its discretion by assessing sanctions against the OAG for issuing the September and October 2008 writs. We sustain the OAG's fourth and seventh issues. Having sustained these issues, we need not address the OAG's attendant sanction arguments raised in its fifth, sixth, and eighth issues.

V. CONCLUSION
We conclude that the Louisiana court did not have jurisdiction under the UIFSA to modify the 1992 Texas support order and, Texas, therefore, had jurisdiction to enforce the 1992 support order when the OAG filed its motion to confirm arrears. We reverse the trial court's January 23, 2009 order denying the OAG's motion to confirm arrears.[9]
Furthermore, we conclude that the trial court abused its discretion by withdrawing the administrative writ and assessing sanctions against the OAG for filing an administrative writ while arrears were in dispute but not yet litigated. Accordingly, we reverse the trial court's November 19, 2008 order assessing sanctions against the OAG. *89 We reverse and remand this case to the trial court for further proceeding consistent with our opinion.
NOTES
[1] The 1992 Texas withholding order and divorce decree, both signed on July 24, 1992, are collectively referred hereinafter as the "1992 Texas support order."
[2] See LA. CHILD. CODE ANN. art. 1306.3 (1997); TEX. FAM.CODE ANN. § 159.206(a) (Vernon 1996).
[3] Father claims that the OAG issued a withholding order on September 3, 2008, while the OAG claims that it filed an administrative writ pursuant to chapter 158 of the Texas Family Code. See TEX. FAM.CODE ANN. § 158.502 (Vernon 2008). The title on the September 3, 2008 withholding instrument appears as follows with first box checked:

[] Order/Notice to Withhold Income For Child Support
Administrative Writ of Withholding
[] Notice of An Order to Withhold Income For Child Support
[4] The OAG also contends that the 1999 Louisiana order is ambiguous and, considering extrinsic evidence, that the Louisiana order should not be construed as a modification to the 1992 Texas support order. As explained below, the Court's resolution of the jurisdictional issue moots this particular argument. We therefore need not address whether the 1999 Louisiana order is ambiguous. See TEX. R.APP. P. 47.1.
[5] Father also argues that Louisiana attempted to modify the 1992 Texas support order in the 1998 Louisiana order that directed Father to pay an additional $80.00 a month for outstanding arrears. We need not address this particular argument because the Court's resolution of the jurisdictional issue moots the argument. See TEX.R.APP. P. 47.1.
[6] The OAG only sought enforcement of the 1992 Texas support order; the OAG made no effort to modify the 1992 Texas support order. Compare TEX. FAM.CODE ANN. § 159.205, with § 159.206.
[7] It is also worth noting that we do not construe Mother's request to cease collection services rendered by the OAG as a mutual agreement between the parties to modify the 1992 Texas support order.
[8] Because the Louisiana court did not have jurisdiction to modify the 1992 Texas support order, Father's argument that the 1998 Louisiana order also modified the Texas order is of no legal consequence. Louisiana lacked jurisdiction to modify the Texas orderin 1998 and 1999because the statutory requirements were not satisfied under the UIFSA.
[9] Because we reverse the trial court's January 23, 2009 order and remand for further proceedings consistent with our opinion, we do not address the OAG's second issue regarding the amount of arrears accrued under the 1992 Texas support order.