Bobby DICKERSON, Appellant,

v.

Roelmina[1] DOYLE and Robert Francis Doyle, Appellees.

No. 08–04–00010–CV.

Court of Appeals of Texas, El Paso.

June 30, 2005.

---

1. The record indicates two different spellings of Appellee's first name. One spelling is "Roehlmina" Doyle and the other is "Roelmina" Doyle.

Doris Sipes, El Paso, for Appellant.

Tony R. Conde, Jr., El Paso, for Appellee.

Before BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

This is a paternity case arising out of an unconventional and non-traditional household. Bob Dickerson appeals the trial court's order sustaining a special appearance and declining jurisdiction on the basis of *forum non conveniens.* We affirm.

### FACTUAL SUMMARY

Frank and Roelmina Doyle, married for ten years, have a thirteen-year-old adopted

daughter, Michelle,[2] and a now five-year-old son, Robert. It is Robert's paternity which is at issue. The Doyles lived in Seoul, Korea where Frank worked for the Corps of Engineers until his retirement in September 2001. Some time during 1997 or 1998, the Doyles met Bob Dickerson, who was serving in the United States Army. Dickerson moved in with the Doyles in March 1998 when his service ended and he, too, became employed by the Corps of Engineers. Robert was born in Seoul on February 13, 2000.

When Frank retired, the family moved to Saratoga Springs, New York and built a house. Frank intended to make this the family's final home since he had grown up in the area. Initially, Dickerson moved with the Doyles but briefly returned to Korea. In December 2001, Dickerson returned to New York and announced he had obtained a position with the Corps of Engineers in White Sands, New Mexico. When he left for White Sands, he took Roelmina and Robert with him. Frank admitted that Roelmina accompanied Dickerson to White Sands willingly. They arrived in El Paso on December 14, 2001 and stayed first at the Fort Bliss Inn. In January 2002, Roelmina, Dickerson, and Robert moved into an apartment.

Frank soon listed the New York house for sale. He and Michelle followed the others to El Paso and moved into the apartment in April. Frank then purchased a home in west El Paso and the Doyles and Dickerson moved into the residence. Frank admitted that Dickerson would sometimes sleep in the master bedroom with Roelmina. Roelmina admitted that Robert called Dickerson "papi" and Frank "daddy."

Frank did not intend for the home to be a permanent residence [3] and had plans to move the family to the southeastern United States. He purchased the home as an investment since he did not believe in paying rent. He grew bored with retirement and again applied with the Corps of Engineers. He was offered a one-year tour in Korea which was to be "unaccompanied," meaning his family would stay behind. However, he hoped to have the tour extended so that Roelmina and the children could join him. Frank put the El Paso house on the market and planned for Roelmina to live there until it sold. Roelmina would then move to southeastern Alabama. Frank left for Korea in August 2002. By this time, Dickerson had obtained employment in Hawaii, although he had not yet left Texas.

While in Korea, Frank learned from Roelmina that she and Dickerson were not getting along. She complained that Dickerson had become both physically and verbally abusive and she did not intend to accompany him to Hawaii. Dickerson arranged an appointment for paternity testing on November 5, 2002 but Roelmina talked him out it. Nevertheless, Dickerson threatened to take Robert to Hawaii. Fearing he would abscond with the child, Roelmina left El Paso with her son on November 6. When Dickerson returned to El Paso from a business trip to Phoenix, he found Roelmina and Robert gone. He called Frank in Korea asking where they were. On November 7, 2002, Dickerson filed his petition to establish the parent-child relationship. He alleged that the court had subject matter jurisdiction since all the parties had resided in El Paso County for six months prior to his filing suit. Roelmina and Robert ended up in

---

**2.** Michelle is identified in the record both as Roelmina's adopted niece and as her adopted sister.

**3.** Having worked in Saudi Arabia for six years, Frank had had enough of desert life.

Birmingham, Alabama; Michelle stayed temporarily with family friends in Louisiana. Roelmina was served at her apartment in Birmingham in December 2002. Frank returned to the States right after Christmas and was served at the airport in Birmingham.

Dickerson moved to Hawaii in January 2003 to begin his job. Claiming that he was merely on temporary assignment to Hawaii and would return to El Paso at the end of his project, Dickerson considered his residence to be El Paso, Texas where he was registered to vote and maintained a Texas driver's license.

## APPLICABLE STATUTORY FRAMEWORK

There is no dispute that Texas was the child's home state at the time this parentage action was filed. Frank admitted that Robert had lived in El Paso for approximately eleven months. Consequently, we are not presented with an issue of subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act.[4] Rather, we must address jurisdiction under the Uniform Parentage Act. The Texas Family Code mandates that an individual may not be adjudicated to be a parent unless the court has personal jurisdiction over him. TEX. FAM.CODE ANN. § 160.604(a) (Vernon 2002 & Vernon Supp.2004–05). Dickerson submitted himself to the jurisdiction of the court by filing his parentage suit. Subsection (b) provides that a court having jurisdiction to adjudicate parentage may exercise personal jurisdiction over a non-resident if the conditions in Section 159.201 are satisfied. Section 159.201, a long-arm statute, allows the court to determine parentage and exercise personal jurisdiction over non-residents if they have resided with the child in this state. In any event, even if a Texas court has both subject matter jurisdiction and personal jurisdiction, it may decline to exercise its jurisdiction if it determines that it is an inconvenient forum and that a court of another state is a more appropriate forum. TEX. FAM.CODE ANN. § 152.207(a). Finally, we note that Frank is presumed to be Robert's father. TEX. FAM.CODE ANN. § 160.204(a)(1) (a man is presumed to be the father of a child if he is married to the mother and the child is born during the marriage). Because Robert is a child with a presumed father, a statute of limitations applies. TEX. FAM.CODE ANN. § 160.607 (a suit to adjudicate parentage of a child having a presumed father shall be brought before the child's fourth birthday;[5] however a proceeding to disprove the presumed father/child relationship may be brought at any time if the court determines that the presumed father and the mother did not live together or engage in sexual intercourse with one another during the probable time of conception and the presumed father never represented to others that the child was his own).

## PROCEDURAL POSTURE

The Doyles filed a special appearance and asked that Dickerson's petition be

---

4. Texas has jurisdiction to make an initial child custody determination if Texas is the home state of the child on the date of the commencement of the proceeding. TEX. FAM. CODE ANN. § 152.201(a)(1). "Home state" means the state in which a child lived with a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. TEX. FAM.CODE ANN. § 152.102(7). A "child custody proceeding" includes a paternity action. TEX. FAM.CODE ANN. § 152.102(4). Texas may exercise subject matter jurisdiction in a paternity action when the mother and child leave the state the day before suit is filed. *In re Calderon–Garza,* 81 S.W.3d 899, 902–03 (Tex.App.-El Paso 2002, orig. proceeding).

5. The statute of limitations under the uniform act is two years.

dismissed. In his response, Dickerson argued that the court had long-arm jurisdiction over the non-residents since the parties had resided in El Paso with the child. Subject to their special appearance, the Doyles filed a motion to dismiss, asking the court to decline jurisdiction on the basis of *forum non conveniens*.

The special appearance hearing was conducted on April 1, 2003. At that time, there was pending in Alabama a motion for a temporary restraining order seeking to enjoin Dickerson from harassment.[6] Following the hearing, the trial court granted the special appearance, finding that the Doyles were residents of Alabama, that Dickerson was a resident of Hawaii, that Texas was not a convenient forum, and that Alabama was a more appropriate forum. Orally, the court pronounced:

> I'm going to abate the proceedings until such time as the proper motion is filed in Alabama and the Alabama court accepts jurisdiction. If the Alabama court does not accept jurisdiction, then I'll retain jurisdiction. I'm going to give the parties 45 days to find out whether or not Alabama is going to accept jurisdiction.

The written order, however, specified:

> IT IS THEREFORE ORDERED, that the Special Appearance ... is hereby granted, that as the Special Appearance is granted and as this court is not a convenient forum for the litigation [of] the subject matter of this cause and as the State of Alabama is a more appropriate forum, IT IS FURTHER ORDERED that further proceedings in this cause in this state are stayed and IT IS ORDERED that within 45 days from the date of the hearing this case be *transferred* to a proceeding in the State of Alabama and thereafter this cause is

dismissed and that these orders are in the best interest of the minor child the subject of this suit. [Emphasis added].

Dickerson objected to the order because it purportedly granted the motion for *forum non conveniens* without the benefit of a hearing and without permitting Dickerson to respond. The trial court ultimately dismissed the Texas suit since no proceedings were brought in Alabama within the 45–day period. From this order, Dickerson appeals. In three issues for review, Dickerson complains that the court erred by (1) sustaining the special appearance; (2) dismissing the parentage suit rather than continuing the stay until the action could be transferred to Alabama; and (3) condoning the Doyles' removal of the child from Texas and compelling Dickerson's acquiescence to Alabama's jurisdiction. For purposes of our analysis, we will consider these issues out of order and begin with Issue Two.

### FORUM NON CONVENIENS

■ Dickerson raises a two-part issue complaining of the trial court's decision to decline jurisdiction based upon the doctrine of *forum non conveniens*. He first complains that he was deprived of a hearing on the Doyles' motion. Secondly, he argues that the court erred by dismissing the suit after the 45–day stay rather than extending the stay until the cause was "transferred." We review the trial court's ruling for an abuse of discretion. *Coots v. Leonard,* 959 S.W.2d 299, 301 (Tex.App.-El Paso 1997, no writ).

### Lack of Hearing?

Dickerson acknowledges that the Family Code allows a court with subject matter jurisdiction to decline to exercise that ju-

---

6. Bob had apparently shown up at the Doyles' Alabama home dressed in disguise. As a result, the Doyles' feared he intended to abscond with Robert.

risdiction if it determines that Texas is an inconvenient forum and that another state is a more convenient forum. TEX. FAM. CODE ANN. § 152.207. The statute permits the court to make this determination "at any time" and the issue "may be raised upon motion of a party, the court's own motion, or request of another court." TEX. FAM.CODE ANN. § 152.207(a). Subsection (b) enumerates eight factors which a court shall consider and specifies that the court shall allow the parties to submit relevant information.[7] TEX. FAM.CODE ANN. § 152.207(b).

██ The hearing below was scheduled for the purpose of considering the Doyles' special appearance. They did not seek a hearing on their motion for forum non conveniens due to a concern that in doing so, they might waive their special appearance. They asked Dickerson to agree to a hearing on the forum issue immediately following the hearing on the special appearance. Frank had come from Korea to attend the hearing and Roelmina had traveled from Alabama. Dickerson specifically declined their request. Nevertheless, the evidence presented in conjunction with the special appearance encompassed all eight of the factors which the trial court needed to consider.

· Roelmina testified to verbal and physical abuse, as well as her fear of Dickerson. She had filed suit in Alabama seeking a temporary restraining order to prevent further harassment by Dickerson. Her Alabama attorney accompanied her to El Paso for the hearing.

· Robert had lived in Alabama for nearly five months and was going to school there.

· There is a considerable distance between El Paso and Birmingham, but no one lived in El Paso any longer.

· Frank was employed by the Corps of Engineers and currently working in Korea. He planned to return to Alabama when his contract of employment expired in August 2003. Dickerson was employed by the Corps and working in Hawaii at the time of the special appearance. By the time of the dismissal hearing, he was in Iraq. Travel expenses were likely to be considerable regardless of whether Texas or Alabama exercised jurisdiction.

· The parties had not agreed as to which state should assume jurisdiction.

· The paternity testing could be conducted in either Texas or Alabama. In addition to establishing paternity, however, Dickerson sought appointment as the child's sole managing conservator. Evidence pertaining to conservatorship was more likely available in Alabama, where the child lived.

· The trial court specifically asked the Alabama attorney whether the State of Alabama would have jurisdiction and the attorney responded that he believed it would.[8]

---

7. The statute requires the court to consider (1) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child; (2) the length of time the child has resided outside of Texas; (3) the distance between the court in this state and the court in the state that would assume jurisdiction;(4) the relative financial circumstances of the parties; (5) any agreement of the parties as to which state should assume jurisdiction; (6) the nature and location of the evidence required to resolve the pending litigation; (7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and (8) the familiarity of the court of each state with the facts and issues in the pending litigation.

8. No litigant tendered evidence of Alabama law, whether it has adopted the Uniform Parentage Act, and if it has, whether its statutory

In the trial court, Dickerson complained that the Doyles were required to set a hearing on their motion prior to the court's ruling. This argument does not take into consideration the language of the statute allowing the court to decline jurisdiction on its own motion, provided that the court allows the parties to submit information. Dickerson has made no showing that he was not allowed to submit relevant information, nor has he articulated what additional information he would have elicited had he been afforded an opportunity.

### *No Inter-State Transfer*

■ Perhaps having recognized this flaw, Dickerson argues on appeal that the court erred by dismissing the suit after the 45-day stay rather than extending the stay until the cause was "transferred." "Transfer" is a misnomer. The statute requires that if the court determines Texas to be an inconvenient forum, "the court shall stay the proceedings upon condition that a child custody proceeding be promptly commenced in another designated state...." TEX.FAM.CODE ANN. § 152.207(c).

The Family Code contemplates only *intra*-state transfers. It provides no mechanism for an *inter*-state transfer. *Coots*, 959 S.W.2d at 307. Inasmuch as the trial court had no authority to transfer the parentage suit, it did not err by failing to do so. Dickerson had a 45-day window within which to bring suit in Alabama. The suit was not dismissed until six months had

elapsed. Finding no error, we overrule Issue Two.

### UNCLEAN HANDS

■ In Issue Three, Dickerson complains that the trial court failed to abide by the mandate of Section 152.208,[9] which requires a trial court to decline jurisdiction due to a party's unjustifiable conduct, such as abduction or concealment. He argues that this provision is applicable because Roelmina wrongfully fled the State of Texas and concealed her whereabouts in Alabama. We disagree with his interpretation of the statute. Jurisdiction is not to be declined based upon a party's unjustifiable conduct. A court shall decline jurisdiction "because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct...." TEX. FAM. CODE ANN. § 152.208(a). Dickerson is the party seeking to invoke the jurisdiction of Texas courts. Whether Roelmina has attempted to invoke jurisdiction in Alabama by virtue of unjustifiable conduct is a question for the Alabama court to consider. At that point, the court would necessarily address Roelmina's claims of family violence, as the Commissioners' Comment duly notes:

> The focus in this section is on the unjustified conduct of the person who invokes the jurisdiction of the court. A technical illegality or wrong is insufficient to trigger the applicability of this section. This is particularly important in cases involving domestic violence and

---

provisions track the uniform act precisely or expand limitations as Texas has done. In the absence of such evidence, we must presume that the law of Alabama is identical to Texas law. *See Ogletree v.Crates*, 363 S.W.2d 431, 435 (Tex.1963); *J. Parra e Hijos, S.A. de C.V. v. Barroso*, 960 S.W.2d 161, 167 (Tex.App.-Corpus Christi 1997, no writ)("In the absence of proper invocation of foreign law, Texas courts must presume the foreign law to be the same as that of Texas," *citing Country Cup-*

board, Inc. v. Texstar Corp., 570 S.W.2d 70, 72 (Tex.Civ.App.-Dallas 1978, writ ref'd n.r.e.) *and Gevinson v. Manhattan Construction Co. of Oklahoma*, 449 S.W.2d 458 (Tex.1969)). *See also* Olin Guy Wellborn III, *Judicial Notice under Article II of the Texas Rules of Evidence*, 19 ST. MARY'S L.J. 1, 28 (1987).

9. This statute is commonly referred to as the "clean hands" provision.

child abuse.... An inquiry must be made into whether the flight was justified under the circumstances of the case. Sampson & Tindall, Texas Family Code Annotated § 152.208, *Commissioners' Comment* p. 536 (2003). Issue Three is overruled.

## SPECIAL APPEARANCE

In Issue One, Dickerson complains that the trial court erred in sustaining the Doyles' special appearance. He argues that Texas has long-arm jurisdiction since the Doyles resided in Texas with Robert.

### *Standard of Review*

■■■■■ The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). Due process requires that the defendant be given adequate notice of the suit and be subject to the personal jurisdiction of the court. *Id.* The Due Process Clause, by ensuring the orderly administration of the laws, "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* at 297, 444 U.S. 286, 100 S.Ct. at 567, 62 L.Ed.2d 490.

■■■■■ Whether a court has personal jurisdiction over a defendant is a question of law. *American Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 805–06 (Tex.2002), *cert. denied,* 537 U.S. 1191, 123 S.Ct. 1271, 154 L.Ed.2d 1025 (2003); *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002). But in resolving this question of law, a trial court must frequently resolve questions of fact. *Coleman,* 83 S.W.3d at 806; *BMC,*

83 S.W.3d at 794. On appeal, the trial court's determination to grant or deny a special appearance is subject to *de novo* review, but appellate courts may be called upon to review the trial court's resolution of a factual dispute. *Coleman,* 83 S.W.3d at 806; *BMC,* 83 S.W.3d at 794. When the trial court does not issue findings of fact, reviewing courts should presume that the trial court resolved all factual disputes in favor of its judgment. *Coleman,* 83 S.W.3d at 806; *BMC,* 83 S.W.3d at 795. However, when the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged on appeal for legal and factual sufficiency. *BMC,* 83 S.W.3d at 795.

### *Personal Jurisdiction Under the Parentage Act*

■■■■■ A court may exercise personal jurisdiction over a nonresident if the conditions in Section 159.201 are satisfied. TEX. FAM.CODE ANN. § 160.604(b). Section 159.201 provides that in a proceeding to determine parentage, a tribunal may exercise personal jurisdiction over a non-resident if the individual has resided with this child in Texas. TEX.FAM.CODE ANN. § 159.201(3)(Vernon Supp.2004–05). The court below may have concluded that it could properly exercise personal jurisdiction over the Doyles. However, it declined to do so because no one lived in Texas and Alabama was a more appropriate forum. We have found no error in this ruling. Consequently, whether the court *could* have exercised jurisdiction is moot. It chose not to, as the statute clearly allows. Issue One is overruled and the judgment of the trial court is affirmed.