Opinion issued July 2, 2013



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-01161-CV

———————————

**MICHAEL LESEM, Appellant**

**V.**

**LIANE MOURADIAN, Appellee**

**On Appeal from the 257th District Court**
**Harris County, Texas**
**Trial Court Case No. 2001-32761**

# O P I N I O N

In this child custody and child support modification proceeding, Michael Lesem filed a motion for enforcement against his ex-wife, Liane Mouradian, after she allegedly failed to return their minor son, J.M.L., to Michael's possession.

Liane filed a motion for modification and also requested that the trial court decline jurisdiction and transfer the case to Florida, where she had been living with J.M.L. for over a year. The trial court granted Liane's motion and transferred the case to Florida. In three issues, Michael contends that (1) the trial court erroneously transferred the child custody portion of the proceedings to Florida because transfer must be based on either the "significant connection" test or inconvenient forum grounds, and the trial court did not make findings on either of these grounds; (2) the trial court erroneously transferred the child support portion of the proceedings to Florida because transfer of such proceedings is not permissible when the obligee parent continues to reside in Texas; and (3) an evidentiary hearing is required before a court can dismiss under the significant connection test or inconvenient forum grounds.

We affirm in part and reverse and remand in part.

## Background

The trial court signed a final decree of divorce on June 29, 2002. In the divorce decree, the trial court appointed Michael and Liane joint managing conservators of J.M.L. and gave Liane the exclusive right to establish J.M.L.'s primary residence. The court ordered that Michael was to have possession of J.M.L. pursuant to a Standard Possession Order. The divorce decree also obligated Michael to pay child support for J.M.L.'s benefit to Liane.

On July 27, 2007, the trial court modified the final divorce decree. The modified order provided that Michael and Liane were to remain joint managing conservators of J.M.L., but it bestowed upon Michael the exclusive right to establish J.M.L.'s primary residence. The order set out Liane's visitation schedule and provided that, beginning in the summer of 2009, Liane was to have possession of J.M.L. each summer from July 1 until July 21. The order modified the child support obligations to require Liane to pay child support for J.M.L.'s benefit to Michael.

On August 10, 2012, Michael filed a "Motion for Enforcement of Possession or Access" alleging that Liane had refused to surrender possession of J.M.L. on July 21, 2012, in violation of the July 27, 2007 modified order. Michael informed the trial court that Liane had filed a custody suit in Palm Beach County, Florida, in April 2012, and he requested that the trial court order Liane to cease pursuit of the Florida case due to the Texas court's continuing, exclusive jurisdiction.

In response, Liane filed with the trial court a petition to modify the parent-child relationship, seeking to further modify the July 27, 2007 modified order. Liane alleged that Michael had voluntarily relinquished primary care and possession of J.M.L. to her for more than six months, and she requested that she be named the party with the exclusive right to designate J.M.L.'s residence and that Michael have possession pursuant to a Standard Possession Order. Liane also

3

requested that the trial court modify the child support order to provide that she have the right to receive child support payments from Michael for J.M.L.

In her modification petition, Liane informed the trial court that J.M.L.'s principal residence was, and had been for at least the preceding six months, in Palm Beach County, Florida. She requested a transfer of the proceedings to the Florida court "[f]or the convenience of the parties and witnesses and in the interest of justice" and alleged the following in support of this request:

> Except for Respondent, MICHAEL LESEM, all the parties, including the child affected by the proceedings, and any potential witnesses related to the child's education, health, and well-being reside outside Texas. Petitioner, LIANE MOURADIAN, and the child the subject of this suit reside in Palm Beach County, Florida, and venue is proper in that county.
>
> . . . .
>
> The child affected by this proceeding does not reside in Texas. Palm Beach County, Florida is the county most appropriate to serve the convenience of Petitioner, the child the subject of this suit, and the witnesses and the interest of justice, and venue is proper in that county.

Liane also alleged that J.M.L. had health concerns and was under the care of physicians in Florida. All witnesses that could testify about this issue, and about J.M.L.'s health since May 2011, were located in Florida.

Liane simultaneously filed a separate motion to transfer and request for the trial court to decline jurisdiction. In this motion, Liane reiterated that she has had "actual care, custody, and control" of J.M.L. since May 2011, and she stated the

4

same grounds for transfer that she had raised in her modification petition. Liane requested that the trial court decline jurisdiction and dismiss the case because Texas is an inconvenient forum for a custody determination. Liane also requested that the trial court confer with the Florida court pursuant to Family Code section 152.110 before declining jurisdiction. *See* TEX. FAM. CODE ANN. § 152.110(b) (Vernon 2008) ("A court of this state may communicate with a court in another state concerning a proceeding arising under this chapter."). The next day, Liane filed an amended motion for modification. She attached an affidavit to this motion in which she averred that J.M.L. had lived with Michael in Texas until May 2011, that Michael voluntarily relinquished the primary care and possession of J.M.L. to her, and that J.M.L. had lived exclusively with her and attended school in Florida since May 2011 with Michael's knowledge and consent.

In response to Liane's modification motion, Michael argued that Texas was the more convenient forum for addressing custody matters because the trial court spent six years resolving issues relating to the parties' divorce and custody of J.M.L., which gave it greater familiarity with the particular case; J.M.L. was born and resided in Texas for eleven and a half years before spending the preceding fifteen months in Florida with Liane; and J.M.L.'s residence in Florida was intended to be temporary. Michael requested that the trial court deny Liane's motion to transfer and retain jurisdiction over all issues relating to J.M.L.

5

Liane submitted a bench brief to the trial court in support of her motion to transfer. In this bench brief, Liane addressed each of the statutory factors relevant for the trial court to determine whether Texas was an inconvenient forum. *See* TEX. FAM. CODE ANN. § 152.207(b) (Vernon 2008). Liane acknowledged that the trial court had continuing, exclusive jurisdiction over the case, but she argued that because J.M.L. had resided with her in Florida for the last sixteen months, all of the information relevant to the modification suit was located outside of Texas, and, therefore, the trial court should decline jurisdiction. She argued that "[a]ll information pertaining to the child's education, living conditions, home life, school, and [health care] needs" is located in Florida and that "there is little, if any, substantial evidence in Texas relating to the child's current circumstances, care, health, and well-being." As evidence, Liane attached e-mail correspondence between her and Michael, indicating that Michael paid tuition for J.M.L. to attend school in Florida, that Michael had purchased a computer for J.M.L. and had it shipped to his school in Florida, that J.M.L. had visited Michael in Houston twice—once in September 2011 for three days and once in December 2011 for four days—since he had moved to Florida, and that Michael, a psychiatrist, agreed to research physicians in the Boca Raton area for J.M.L.

The trial court held a hearing on Liane's motion to transfer on October 5, 2012. Liane's and Michael's counsel attended in person, and the trial judge of the

Palm Beach County court was present by telephone. Liane's counsel argued that because J.M.L. had resided in Florida for the previous sixteen months and all of the evidence relevant to his health care was located in Florida, Texas was an inconvenient forum. Michael's counsel argued that there is relevant evidence located in Texas: the trial court oversaw six years of litigation concerning J.M.L., J.M.L. has family and extended family in Houston, and J.M.L. lived in Houston for eleven and a half years before moving to Florida with Liane. Michael's counsel also argued that the hearing was not "noticed for a forum non-convenience hearing," and he requested that the trial court hold such a hearing on "proper notice" and allow the parties to present evidence.

The trial court stated at the hearing that it was uncontroverted that Florida was now J.M.L.'s home state and that the fact that Michael had intended for J.M.L. to stay with Liane only temporarily was irrelevant to that determination. The trial court also stated that it could not consider any evidence predating the order to be modified, the July 27, 2007 order. The court concluded that, under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), it did not "have to hear any evidence because [it has an] uncontroverted stipulation that the child has been out of the State of Texas for six months." The court also noted that it has "absolute authority" to cede its continuing jurisdiction to Florida and indicated its

willingness to do so. The trial court then determined that it no longer had continuing, exclusive jurisdiction, and it ceded jurisdiction to the Florida court.

On October 12, 2012, the trial court granted Liane's motion to transfer. In the order, the trial court stated that it "cedes jurisdiction over this matter to Palm Beach County, Florida."

Michael subsequently filed a motion to reconsider. In this motion, Michael argued that the trial court did not hear evidence on whether J.M.L. retained a significant connection to Texas, nor did it hear evidence concerning the statutory factors relating to whether Texas was an inconvenient forum. He also argued that because the trial court did not make findings concerning whether J.M.L. had a significant connection to Texas or whether Texas was an inconvenient forum, "there is no basis on which this Court can defer jurisdiction to Florida . . . ." He further contended that the trial court could not transfer issues concerning child support to Florida, regardless of whether Florida was now J.M.L.'s home state, because Michael, the obligee under the July 27, 2007 modified order, still resided in Texas. Michael also requested, in this motion, that the trial court file findings of fact and conclusions of law.

The trial court denied Michael's motion to reconsider on December 12, 2012, and dismissed the case. This appeal followed.

**Transfer of Child Custody Proceedings**

In his first issue, Michael contends that the trial court erroneously transferred the custody portion of the modification suit to Florida because the trial court did not make findings either that J.M.L. no longer had a significant connection to Texas or that Texas was an inconvenient forum, and a determination that Florida is now J.M.L.'s home state is insufficient to support transfer.

The UCCJEA governs jurisdiction over child custody issues between Texas and other states. *In re Isquierdo*, No. 01-11-00193-CV, 2012 WL 2455074, at *2 (Tex. App.—Houston [1st Dist.] June 28, 2012, orig. proceeding). The UCCJEA was enacted "to clarify and to unify the standards for courts' continuing and modification jurisdiction in interstate child-custody matters." *In re Forlenza*, 140 S.W.3d 373, 374 (Tex. 2004) (orig. proceeding). Family Code section 152.201(a) is the "exclusive jurisdictional basis for making a child-custody determination by a court of this state," and it provides that Texas has jurisdiction to make an initial child-custody determination if one of four circumstances are met.[1] *See Waltenburg v. Waltenburg*, 270 S.W.3d 308, 313 (Tex. App.—Dallas 2008, no pet.) (discussing Family Code section 152.201(b)); *see also* TEX. FAM. CODE ANN. § 152.102(8) (Vernon 2008) (defining "initial determination" as "the first child custody determination concerning a particular child"). One of these circumstances is

---

[1] It is uncontroverted that the Texas court had jurisdiction to make an initial child-custody determination in this case.

whether Texas is the "home state" of the child on the date of the commencement of the proceeding. TEX. FAM. CODE ANN. § 152.201(a)(1) (Vernon 2008). The Family Code defines "home state" as "the state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding." *Id.* § 152.102(7).

Generally, once Texas makes a child-custody determination, Texas retains "exclusive continuing jurisdiction" over the determination until "a court of this state determines that neither the child, nor the child and one parent . . . have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships." TEX. FAM. CODE ANN. § 152.202(a)(1) (Vernon 2008); *In re Forlenza*, 140 S.W.3d at 375 ("Article 2 of the UCCJEA specifically grants exclusive continuing jurisdiction over child-custody disputes to the state that made the initial custody determination and provides specific rules on how long this jurisdiction continues.").

A court that has continuing jurisdiction to make a child-custody determination may decline to exercise its jurisdiction if "it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." TEX. FAM. CODE ANN. § 152.207(a); *Monk v. Pomberg*, 263 S.W.3d 199, 205 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Before

10

determining if it is an inconvenient forum, the Texas court shall consider whether it is appropriate for the court of another state to exercise jurisdiction. TEX. FAM. CODE ANN. § 152.207(b). To make this determination, the court "shall allow the parties to submit information and shall consider all relevant factors" including:

(1) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(2) the length of time the child has resided outside this state;

(3) the distance between the court in this state and the court in the state that would assume jurisdiction;

(4) the relative financial circumstances of the parties;

(5) any agreement of the parties as to which state should assume jurisdiction;

(6) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

(7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

(8) the familiarity of the court of each state with the facts and issues in the pending litigation.

*Id.* If the Texas court determines that it is an inconvenient forum and that the court of another state is a more appropriate forum, the Texas court shall stay the proceedings upon the condition that child custody proceedings be commenced promptly in the other state, and the Texas court may impose "any other condition the court considers just and proper." *Id.* § 152.207(c).

11

When, as here the trial court does not file findings of fact and conclusions of law, we imply all necessary findings of fact to support the trial court's order. *In re W.C.B.*, 337 S.W.3d 510, 513 (Tex. App.—Dallas 2011, no pet.) (citing *Waltenburg*, 270 S.W.3d at 312); *Touradji v. Beach Capital P'ship, L.P.*, 316 S.W.3d 15, 23 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (stating that when trial court does not issue fact findings, we presume that court resolved all factual disputes in favor of its ruling). When the appellate record includes a reporter's record, the trial court's implied findings may be challenged for legal and factual sufficiency. *In re W.C.B.*, 337 S.W.3d at 513. In a legal sufficiency review, we consider the evidence in the light most favorable to the trial court's order and indulge every reasonable inference that supports it. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). In a factual sufficiency challenge, we consider all the evidence and determine whether the evidence supporting the order is so weak or so against the overwhelming weight of the evidence that the order is clearly wrong and manifestly unjust. *Id.* (citing *City of Keller*, 168 S.W.3d at 822).

In family law cases, because the abuse of discretion standard of review overlaps with traditional sufficiency of evidence standards of review, legal and factual sufficiency are not independent grounds of reversible error, "but instead are factors relevant to our assessment of whether the trial court abused its discretion." *Id.* (citing *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.)).

The trial court does not abuse its discretion if "some evidence of a substantial and probative character exists to support the trial court's decision." *Id.* (citing *In re S.E.K.*, 294 S.W.3d 926, 930 (Tex. App.—Dallas 2009, pet. denied)).

Here, Michael argues that the trial court impermissibly based its decision to transfer the case solely on the fact that Florida is now J.M.L.'s home state, which is not a valid basis to decline jurisdiction. He argues that because the trial court failed to make findings either that J.M.L. lacks a significant connection to Texas or that Texas is an inconvenient forum, there is "no basis on which Texas can defer jurisdiction to Florida." We disagree.

The trial court stated on the record at the October 5, 2012 hearing that it was uncontroverted that J.M.L.'s home state was now Florida and that it had "absolute authority to cede my continuing jurisdiction [to] the State of Florida." In its order granting Liane's motion to transfer, the trial court stated only that it ceded jurisdiction over the matter to Palm Beach County, Florida. It did not state, either in this order or in the order denying Michael's motion for reconsideration, its rationale for transferring the case. The trial court did not file findings of fact and conclusions of law.

Liane specifically argued in her motion to transfer that the trial court should decline jurisdiction because J.M.L. lacked a significant connection to Texas and because Texas was an inconvenient forum. Because the trial court did not file

13

findings and conclusions, we imply all findings necessary to support the trial court's judgment, including findings that J.M.L. lacks a significant connection to Texas and that Texas is an inconvenient forum. *See Waltenburg*, 270 S.W.3d at 319 (noting that, generally, appellate court implies all findings necessary to support judgment, but will not "imply that the court's ruling is based on a ground not asserted in the motion on which the court stated it was ruling."). Although Michael does not challenge on appeal the sufficiency of the evidence to support these implied findings, we briefly address the information before the trial court that supports these findings.

Liane attached an affidavit to her amended modification motion in which she averred that J.M.L. had lived with Michael in Texas until Michael "voluntarily relinquished the primary care and possession" of him in May 2011. Since that time, J.M.L. had lived with Liane in Palm Beach County, with Michael's knowledge and consent, and attended school in Florida. Liane also submitted to the trial court a bench brief, in which she addressed each of the statutory factors relevant to a determination that Texas was an inconvenient forum as enumerated in section 152.207(b).[2] She stated that she and J.M.L. had been residing together in

---

[2] Liane's bench brief did not address the first statutory factor—whether domestic violence had occurred and was likely to continue—and there is no indication in the record that domestic violence was an issue in this case. *See* TEX. FAM. CODE ANN. § 152.207(b)(1) (Vernon 2008); *see also Hart v. Kozik*, 242 S.W.3d 102, 112 (Tex. App.—Eastland 2007, no pet.) ("If no evidence of a particular factor is

14

Palm Beach County for over sixteen months and that J.M.L. attended school in Florida. She argued that the distance between Texas and Florida "renders any Florida witnesses to the child's current living conditions and circumstances to be outside of the subpoena range" and renders the costs and time restraints associated with an investigation by an amicus attorney "expensive and highly burdensome." She stated that she currently works as a nurse consultant for a home health care agency and that she has limited financial resources to participate in litigation in Texas and to transport J.M.L. to Texas "for any necessary [a]micus interviews or appearances." She stated that Michael, on the other hand, is a psychiatrist and the owner of a research clinic in Houston and that he has "ample financial resources to participate in a long-distance litigation in Florida," such that requiring him to litigate the modification suit in Florida "would be significantly less financially burdensome" on him than requiring her to litigate in Texas.

Liane attached to her bench brief several e-mails from Michael concerning (1) Michael's payment of tuition for J.M.L.'s Florida school; (2) Michael's purchase of a laptop for J.M.L. that he had shipped to J.M.L.'s Florida school; (3) Michael's purchase of a roundtrip airplane ticket for J.M.L. to travel to Houston and return to Florida for three days in September 2011; and (4) Michael's offer to research potential physicians for J.M.L. in the Boca Raton, Florida area.

offered, we cannot say that the trial court abused its discretion by failing to make a fact finding.").

Liane argued that these actions showed Michael's "intent and agreement for the child to remain in Florida."

Liane also stated that the testimony of J.M.L.'s doctors and teachers would be necessary in the underlying modification suit and that J.M.L. has an established relationship with health care professionals in Florida. She argued that it would be cost-prohibitive for these potential witnesses to travel to Texas to give any necessary testimony in the modification proceeding and that it would be more efficient to handle the proceedings in Florida. Liane acknowledged that the Texas court had previously addressed issues concerning J.M.L., but she argued that J.M.L.'s circumstances had materially and substantially changed since the last modification proceeding in 2007, requiring the presentation of "five years of new information about the child to the Court." She also pointed out that she had filed a modification suit in Palm Beach County in April 2012, to which Michael never responded, leading to a default judgment. She argued that the Florida court was therefore familiar with the facts and issues in the litigation.

Based on the information available to the trial court, we conclude that the evidence supports an implied finding that Texas is an inconvenient forum and therefore supports the trial court's decision to transfer the custody modification proceeding to Florida. *See Monk*, 263 S.W.3d at 211 (holding that evidence supported inconvenient forum finding when child had lived in Iowa for

16

approximately two years before trial; evidence was presented that child had extensive family connections, attended school, participated in extracurricular activities, and received psychiatric treatment in Iowa; child visited non-custodial parent in Texas for several weeks each summer and spoke with him "most Sundays"; custodial parent was employed in Iowa and record was silent about non-custodial parent's employment in Texas; record contained no indication of domestic violence; and parties did not agree on which state should assume jurisdiction); *see also Isquierdo*, 2012 WL 2455074, at \*5 ("[T]he mere fact that [the father] continues to reside in Texas does not support the trial court's exercise of exclusive continuing jurisdiction over the modification proceeding brought by [the father].").

We overrule Michael's first issue.

## Necessity of Evidentiary Hearing

In his third issue, Michael contends that the trial court erroneously transferred the proceedings to Florida without holding an evidentiary hearing, which is required by both section 152.202, relating to whether J.M.L. has a significant connection to Texas, and section 152.207, relating to whether Texas is an inconvenient forum.

Section 152.207(b) provides that, before a Texas court determines whether it is an inconvenient forum, it shall consider whether it is appropriate for a court of

17

another state to exercise jurisdiction. TEX. FAM. CODE ANN. § 152.207(b). "For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors," including the statutorily enumerated factors. *Id.* This section does not explicitly state that the trial court must hold an evidentiary hearing before making a determination that Texas is an inconvenient forum.

In *Dickerson v. Doyle*, the El Paso Court of Appeals addressed whether the trial court denied Dickerson a hearing on the Doyles' forum non conveniens motion when it held a hearing concerning the Doyles' special appearance, heard evidence relating to the special appearance which also encompassed the section 152.207(b) factors, and subsequently declined to exercise jurisdiction over the case. *See* 170 S.W.3d 713, 719 (Tex. App.—El Paso 2005, no pet.). In affirming the trial court's determination, the El Paso court noted that section 152.207 allows the trial court to decline jurisdiction on its own motion, "provided that the court allows the parties to submit information." *Id.* at 720. Because Dickerson made no showing that he was not allowed to submit relevant information, nor had he articulated the information that he would have elicited had he been afforded an opportunity to do so at a hearing, the court held that the trial court did not err. *Id.*; *see also In re D.T.C.*, No. 09-08-00388-CV, 2009 WL 2045312, at *4 (Tex. App.—Beaumont July 16, 2009, no pet.) (mem. op.) (affirming order of trial court determining that Texas was inconvenient forum despite failure to hold evidentiary

18

hearing when parties provided affidavits concerning relevant factors and "the trial court was well acquainted with this case and the parties"); *In re M.Y.C.*, No. 04-06-00895-CV, 2007 WL 2935482, at *2 (Tex. App.—San Antonio Oct. 10, 2007, no pet.) (mem. op.) (affirming inconvenient forum determination despite no evidentiary hearing when information before trial court "included some of the factors enumerated under section 152.207(b)" and appellant "has not shown that he was not allowed to submit relevant information for the trial court's determination").

Here, there is no indication that the trial court did not allow Michael an opportunity to present relevant evidence. Although the trial court did not hear testimony at the October 5, 2012 hearing, it stated on the record that counsel could have brought their clients to the hearing. Additionally, Liane submitted an affidavit with her amended motion to modify and a bench brief with exhibits attached as support for her motion to transfer. Michael did not avail himself of these methods of presenting relevant information to the trial court, but there is no indication in the record that he was prevented from doing so. Moreover, Michael has not articulated the information that he would have elicited had the trial court held a full evidentiary hearing on Liane's motion to transfer, nor has he identified any fact issue that he would have disputed at such a hearing. *See Dickerson*, 170 S.W.3d at 720; *see also Razo v. Vargas*, 355 S.W.3d 866, 871–74 (Tex. App.—

19

Houston [1st Dist.] 2011, no pet.) (holding, in case involving registration and enforcement of foreign child custody decrees, that although relevant statute did not explicitly require evidentiary hearing, such hearing was required under facts of case because aggrieved party presented bill of exceptions demonstrating that material fact issues in case were controverted).

We conclude that section 152.207 does not require the trial court to hold an evidentiary hearing before it makes a determination that Texas is an inconvenient forum.[3] We therefore hold that the trial court did not err by granting Liane's motion to transfer without holding an evidentiary hearing.

We overrule Michael's third issue.

**Transfer of Child Support Proceedings**

In his second issue, Michael contends that the trial court erroneously transferred the child support portion of the modification suit to Florida because he is the obligee parent under the July 27, 2007 modified order, and he continues to reside in Texas.

The Uniform Interstate Family Support Act ("UIFSA") was enacted to "streamline and expedite interstate and intrastate enforcement of [child] support decrees." *Cowan v. Moreno*, 903 S.W.2d 119, 121 (Tex. App.—Austin 1995, no

---

[3] Because the trial court could have based its decision to grant Liane's motion to transfer and dismiss the case solely on section 152.207, we need not address whether section 152.202, concerning whether J.M.L. has a significant connection to Texas, requires an evidentiary hearing.

writ). UIFSA applies when a party seeks to modify a support order issued by another state, and a party seeking modification of another state's support order must establish that UIFSA grants jurisdiction to modify. *See In re T.L.*, 316 S.W.3d 78, 83 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Family Code section 159.205(a) provides that a Texas court that has issued a child support order "has and shall exercise continuing, exclusive jurisdiction to modify its order if the order is the controlling order and . . . at the time a request for modification is filed, this state is the state of residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued." TEX. FAM. CODE ANN. § 159.205(a)(1) (Vernon 2008); *In re T.L.*, 316 S.W.3d at 83 ("Jurisdiction under the UIFSA rests upon the concept of continuing, exclusive jurisdiction to establish and modify the levels of child support due a particular child."). Here, Texas is the state of residence of Michael, the obligee.

Once a Texas court that has jurisdiction enters a support decree, that court is the only court entitled to modify the decree as long as the court retains continuing, exclusive jurisdiction. *In re T.L.*, 316 S.W.3d at 83. A court of another state may enforce the Texas support decree under UIFSA, but that court has no authority under UIFSA to modify the support decree "so long as one of the parties remains in the issuing state." *Id.*; *In re Casseb*, 119 S.W.3d 841, 843 (Tex. App.—San Antonio 2003, no pet.) ("[T]he court in Bexar County has continuing exclusive

21

jurisdiction over its support order because section 159.205(a) provides that Bexar County has such jurisdiction until no party resides in the state or all parties consent to the transfer of jurisdiction to another state."); *cf. In re B.O.G.*, 48 S.W.3d 312, 317 (Tex. App.—Waco 2001, pet. denied) (holding that issuing court lacked jurisdiction to modify child support order when obligor parent had moved to Canada and obligee parent and child had moved to Virginia). "Only if the issuing state no longer has a sufficient interest in the modification of its order may the responding state assume the power to modify it . . . ." *In re T.L.*, 316 S.W.3d at 83; *see also In re Hattenbach*, 999 S.W.2d 636, 639 (Tex. App.—Waco 1999, orig. proceeding) (holding, in mandamus proceeding, that Texas trial court "had no discretion but to retain the support portion of the proceedings in Texas because the parties did not agree otherwise").

Family Code section 159.205 provides two additional ways in which a Texas court may lose continuing, exclusive jurisdiction to modify a child support order, neither of which are applicable here. *See* TEX. FAM. CODE ANN. § 159.205(b)–(c). Subsection (b) requires that both the obligor and the obligee consent, in a record filed with the Texas court, that a court of another state that has jurisdiction over at least one the parties or that is located in the state of residence of the child may modify the order and assume continuing, exclusive jurisdiction. *Id.* § 159.205(b). Michael has resisted the trial court's efforts to transfer the support modification

proceeding to Florida, and, thus, he does not consent to Florida assuming jurisdiction over this proceeding. As a result, Florida may not assume jurisdiction to modify pursuant to this subsection. Subsection (c) provides that a Texas court shall recognize the continuing, exclusive jurisdiction of a court of another state if the other state's court has issued a child support order that modifies a child support order of a Texas court under a substantially similar law. *Id.* § 159.205(c). The record does not reflect that Florida has issued a child support order modifying the Texas court's July 27, 2007 modified order. UIFSA, unlike the UCCJEA, provides no mechanism for the issuing tribunal—here, the Texas court—to decline to exercise its continuing, exclusive jurisdiction and transfer jurisdiction to modify a support order to a court in another state.

It is undisputed that Michael, the obligee parent under the July 27, 2007, modified order, continues to reside in Texas. Thus, because one party remains in Texas, the issuing state of the controlling support order—Texas—retains continuing, exclusive jurisdiction and may not divest itself of jurisdiction and transfer the support modification proceeding to Florida. *See* TEX. FAM. CODE ANN. § 159.205(a)(1); *In re T.L.*, 316 S.W.3d at 83. We hold that the trial court erroneously transferred the child support portion of Liane's modification proceeding to the Florida court.

We sustain Michael's second issue.[4]

---

[4] Liane also acknowledges in her brief that, pursuant to section 159.205, the trial court has continuing, exclusive jurisdiction over the child support issues, but she argues that the UCCJEA and UIFSA have "separate and independent jurisdictional requirements," and, therefore, the jurisdiction to modify the support order does not confer jurisdiction to modify the custody order. She urges this court to hold that, although the trial court may retain jurisdiction over the support issues, the custody issues should be transferred to Florida. We note that Family Code section 152.207 contemplates a situation in which the Texas court declines to exercise jurisdiction over the child custody portion of the proceeding on the basis that Texas is an inconvenient forum, but retains jurisdiction over another portion of the proceeding. TEX. FAM. CODE ANN. § 152.207(d) ("A court of this state may decline to exercise its jurisdiction under this chapter if a child custody determination is incidental to an action for divorce or another proceeding while still retaining jurisdiction over the divorce or other proceeding."); *Arnold v. Price*, 365 S.W.3d 455, 462 n.4 (Tex. App.—Fort Worth 2011, no pet.); *In re Hattenbach*, 999 S.W.2d 636, 639 (Tex. App.—Waco 1999, orig. proceeding) ("By adopting these uniform acts, [UIFSA and the predecessor to the UCCJEA], the legislature has created an unsatisfactory situation in which a suit affecting a parent-child relationship is severed into parallel proceedings in different states. However, any remedy for this awkward result must come from the legislature, not the courts.").

## Conclusion

We affirm the order of the trial court as it relates to the child-custody portion of Liane's motions to modify and to transfer.  We reverse the order of the trial court as it relates to the child-support portion of Liane's motions to modify and to transfer, and we remand the case to the trial court for further proceedings consistent with this opinion.  All pending motions are dismissed as moot.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Bland.