Evelyn V. Keyes, Justice
In this case involving a motion to modify child support and custody matters, the trial court transferred the underlying case from Galveston County to Cook County, Illinois.[1] Relator, Crystal Melody Meekins, filed a petition for writ of mandamus, seeking to compel the trial court to (1) hold a hearing on her motion for enforcement of possession or access to her minor daughter, *732 C.G.M.-N. and (2) vacate its order transferring the case to Illinois. Meekins contends that the trial court abused its discretion by (1) failing to set her motion for a hearing, (2) transferring the child support proceeding to Illinois in violation of the Uniform Interstate Family Support Act ("UIFSA"), Texas Family Code, Chapter 159, and (3) transferring the child custody proceeding to Illinois in violation of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), Texas Family Code, Chapter 152.
We conditionally grant the petition for writ of mandamus in part.
Background
A. The Original Decree
Meekins, who is from Baytown, Texas, and works in sales for a Houston-based software company, often travels to the Midwest for work. She met real party in interest David Nahorski in Chicago, where he lives, and they began a relationship. Their daughter, C.G.M.-N., was born in Texas in September 2011. Approximately seven weeks after C.G.M.-N.'s birth, Meekins returned to work and the family moved to Illinois. Over the next two years, Meekins and C.G.M.-N. spent time in both Illinois and Texas, although the parties dispute how much time Meekins and C.G.M.-N. spent in each state.
Meekins filed a suit affecting the parent-child relationship ("SAPCR") in Galveston County in 2013. In November 2013, the trial court issued an agreed order adjudicating Nahorski as C.G.M.-N.'s father and addressing child custody and support issues ("the original decree"). The agreed order stated that C.G.M.-N.'s "home state" was Texas. The trial court appointed Meekins and Nahorski joint managing conservators and gave Meekins the "exclusive right to designate the primary residence of the child within Galveston County and counties contiguous thereto." The agreed order stated:
IT IS ORDERED that the primary residence of the child shall be Galveston County and counties contiguous thereto, and the parties shall not remove the child from Galveston County and counties contiguous thereto, for the purpose of changing the primary residence of the child until modified by further order of the court of continuing jurisdiction or by written agreement signed by the parties and filed with the court.
The trial court also entered a Modified Possession Order setting out Nahorski's possession of C.G.M.-N., which changed to a Standard Possession Order when C.G.M.-N. reached school age. The original decree ordered Nahorski to pay child support to Meekins.
B. The Modification Proceedings
It is undisputed that the parties did not follow the Modified Possession Order set out in the original decree. Because Meekins continued to travel frequently to the Midwest, she leased an apartment in Chicago and allowed Nahorski to have greater periods of possession of C.G.M.-N. than provided for in the original decree. When Meekins had possession of C.G.M.-N., they would sometimes stay in Chicago at Meekins' apartment, they would sometimes travel around the Midwest, and on other occasions they would travel to Texas. It is also undisputed that Meekins purchased a home in Friendswood, Texas in 2012 and a condominium in Galveston.
On March 31, 2017, Nahorski filed a petition to modify the parent-child relationship in the trial court. Nahorski alleged that the trial court had continuing, exclusive jurisdiction over the case, but that C.G.M.-N.'s county of residence was now Cook County, Illinois. Nahorski further alleged that Meekins had "voluntarily *733 relinquished the primary care and possession of the child to another person for at least six months," and he requested that he be appointed as the person with the right to designate C.G.M.-N.'s primary residence. Nahorski also requested that he be awarded the exclusive right to receive child support and that Meekins be awarded a Standard Possession Order with long-distance travel provisions.
That same day, Nahorski also filed a motion to transfer the case to Cook County, Illinois. Nahorski again alleged that the trial court had retained continuing, exclusive jurisdiction over the case "as a result of prior proceedings." As grounds for transfer, Nahorski alleged that the "principal residence of the child is in Cook County, Illinois, and has been in that county during the six-month period preceding the commencement of this suit." The record reflects that Nahorski has filed a proceeding in Illinois, although the record does not indicate when he initiated this proceeding.
Meekins moved to strike Nahorski's petition to modify and motion to transfer, arguing that the proceeding was governed by the UCCJEA, that Nahorski's petition to modify "fail[ed] to disclose information required in a first pleading under the UCCJEA when all parties do not reside in Texas," and that the court should strike Nahorski's motion to transfer because he failed "to follow the procedures of the UCCJEA in order to invoke the jurisdiction of the Courts in Cook County, Illinois." In response, Nahorski filed an "Affidavit for UCCJEA Information" in which he averred, among other things, that C.G.M.-N. had lived with him from August 2015 through the present time.
Nahorski also filed an affidavit in support of his motion to transfer. In this affidavit, he described two instances that had occurred in January 2017 in Chicago in which Meekins was heavily intoxicated while in C.G.M.-N.'s presence. He also averred that C.G.M.-N. had been attending school near Nahorski's residence since January 2016, that he was responsible for taking C.G.M.-N. to all of her doctor and dental appointments, and that Meekins, although notified, had never attended such appointments. He further averred that C.G.M.-N. was enrolled in a dance class in the Chicago area and that he was the one who helped C.G.M.-N. with her homework.
Meekins filed an affidavit controverting Nahorski's motion to transfer and averred:
I now reside in Galveston County, Texas and I have lived in Galveston County, Texas with [C.G.M.-N.] since her birth. The principal residence of the child is and remains to be in Galveston County, Texas.
My homestead is located in Friendswood, Galveston County, Texas; my driver's license is issued by the State of Texas and contains my homestead address in Galveston County. I am also registered to vote in Galveston County.
I travel often for work and for approximately 3 years I have leased an apartment in Chicago, Cook County, Illinois so that [C.G.M.-N.] and I can stay there when I am working instead of staying in hotels.
I do own other real estate, i.e., a condominium on Galveston Island, Texas.
On April 27, 2017, a visiting associate judge held a hearing on Nahorski's motion to transfer and Meekins' motion to strike and denied both motions. Nahorski then moved for a de novo hearing on his motion to transfer before the presiding judge of the County Court at Law Number One.
C. Hearing on the Motion to Transfer
The trial court held a hearing on Nahorski's motion to transfer on July 6, 2017. At this hearing, Nahorski, represented by *734 new counsel, argued for the first time that the trial court did not have continuing exclusive jurisdiction over the case because Texas was not C.G.M.-N.'s home state at the time the trial court entered the original decree in November 2013. Nahorski argued that although C.G.M.-N. was born in Texas in September 2011, she moved to Illinois several weeks later, and she had lived in Illinois for the six months preceding the filing of the original SAPCR. The trial court allowed the parties to present evidence on this issue.
Nahorski testified that, prior to C.G.M.-N.'s birth, he and Meekins lived together in Illinois. Approximately six weeks before C.G.M.-N. was born in September 2011, Meekins traveled to the Houston area to be with her family for the birth. Nahorski traveled back and forth between Texas and Illinois, and in early November 2011, Nahorski, Meekins, and C.G.M.-N. went to Illinois. According to Nahorski, C.G.M.-N. has never spent extended periods of time in Texas, and he testified that she has always spent more days per month in Illinois than in Texas.
Beginning in 2014, after the trial court signed the original decree, Nahorski began keeping track of how much time C.G.M.-N. spent with him and how much with Meekins, as well as where C.G.M.-N. was when she was in Meekins' possession, where she was in pre-school, and whether Meekins attended C.G.M.-N.'s doctor and dental appointments that occurred when she was in Illinois. The trial court admitted copies of these calendars-which included Nahorski's estimates of the percentage of time C.G.M.-N. spent with her respective parents-into evidence. According to Nahorski's calendars, C.G.M.-N. spent at least a few nights per month, most months, in Texas with Meekins. Nahorski calculated that in the six months leading up to his filing of the petition to modify in March 2017, C.G.M.-N. had spent 85% of the time in Illinois and 15% of the time in Texas.
Nahorski also testified that C.G.M.-N. attended pre-school four days per week at a school in the Chicago area during the 2016-2017 school year. C.G.M.-N. also attended ballet classes at a dance studio near Nahorski's residence. He testified that he and Meekins had discussed which school C.G.M.-N. would attend for kindergarten, with Nahorski suggesting a school near his residence and Meekins suggesting a different school in Chicago. He stated that there had never been any discussion of C.G.M.-N.'s returning to Texas for school. Nahorski also testified that, to his knowledge, C.G.M.-N. does not have a regular doctor or dentist in Texas and that he, as opposed to Meekins, takes C.G.M.-N. to all of her appointments in Illinois.
Nahorski further stated that Meekins has a residence in Chicago and that, although Meekins would take C.G.M.-N. to Texas on occasion, the majority of their time together was spent in Chicago. He testified that there have been no extended periods of time in which Meekins has "moved back to Texas and actually lived down here."
On cross-examination, Nahorski agreed that, because Meekins traveled frequently for work and often brought C.G.M.-N. with her, she gave Nahorski and his parents, who also live in the Chicago area, more time with C.G.M.-N. than the parties had contemplated in the original decree because Meekins "is working some of that time." Nahorski agreed that, at the time of the original decree in November 2013, the parties agreed C.G.M.-N. would attend school in Galveston, but Nahorski stated that he "no longer agreed" with that decision. Meekins' counsel later asked Nahorski:
And you-you think that because [Meekins] has been generous and thought it *735 was in [C.G.M.-N.'s] best interest to be with you and your parents if she was working, you've now turned that around to say that [C.G.M.-N.] lives with you. Correct?
Nahorski agreed with this statement.
Meekins testified that she is a global account executive and that she has worked with the Midwest region since 2004. In 2008, she leased an apartment in Chicago, and then in 2012, when C.G.M.-N. was seven months old, she purchased a house in Friendswood. She testified that she decided to return to Texas because of the Friendswood school district, and she contemplated putting C.G.M.-N. in school in Friendswood "close to her cousins." She stated that, after she purchased the house in 2012, both she and C.G.M.-N. moved in and lived in Friendswood. Meekins stated that she filed a SAPCR in Galveston County in early 2013 and that C.G.M.-N. had lived in Texas for the six months preceding this filing. She further stated that at the time the trial court entered the original decree she was not leasing any property in Chicago.
Meekins also testified that because C.G.M.-N. was not yet in school she had a live-in nanny in Friendswood who would sometimes watch C.G.M.-N. and, on other occasions, she would bring C.G.M.-N. with her when she traveled for work. For a while, the two of them would stay in hotels when they traveled to Chicago, and, during the day, Nahorski or his parents would take care of C.G.M.-N. Meekins testified that, upon Nahorski's suggestion, she began leasing an apartment in Chicago in May 2014 and letting Nahorski and his parents watch C.G.M.-N. to save money. Meekins stated that she believed it was a good idea for C.G.M.-N. to spend as much time as possible with Nahorski and her paternal grandparents while she was young.
Meekins disagreed with Nahorski's calculations of how much time C.G.M.-N. spent with both of them, stating that she had possession of C.G.M.-N. more than just weekends. She stated that sometimes C.G.M.-N. would spend a weekday with Nahorski's parents and then spend the night with Meekins. In her estimation, the percentage breakdown of the time C.G.M.-N. spent with Nahorski and her was closer to "55/45."
Meekins stated that she stopped leasing an apartment in Chicago in June 2017 in anticipation of C.G.M.-N.'s starting school in Texas that fall. She also stated that she had not been traveling as much for work and that she anticipated traveling less now that C.G.M.-N. had reached school-age.
Meekins further testified that C.G.M.-N. has thirteen cousins, all of whom live in the Houston area, and that Meekins' "whole family and [her] support system" is in the Houston area. She planned to enroll C.G.M.-N. in a dance studio in Friendswood, and she stated that C.G.M.-N. is already enrolled in an elementary school in Friendswood.
On examination by Nahorski's counsel, Meekins agreed that, on the weekends C.G.M.-N. spent with her, they sometimes stayed in Illinois and they sometimes traveled to Texas, depending on the season. She testified that the plan had been for C.G.M.-N. to attend school in Friendswood, although she had been willing to "explore" the option of C.G.M.-N. attending kindergarten at a school in Chicago. She also agreed that the family had moved back to Illinois by early November 2011, although she stated that she was already looking for a house in Friendswood at that time. Meekins further testified that, some years, her income is around $500,000, and she agreed that this amount was a "great deal" more than the income of Nahorski, *736 who was self-employed and going back to school.
Meekins also presented the testimony of two of her friends: Angela Reagan and Kristina Smith. Reagan, a realtor, assisted Meekins in her purchase of the Friendswood house. She testified that Meekins told her that she wanted to purchase that house "[f]or the school district for when her daughter started school." Reagan stated that, in the last six months, she had seen Meekins with C.G.M.-N. in Texas around eight times. Smith, Meekins' closest friend, testified that Meekins' plan was always for C.G.M.-N. to go back and forth between Illinois and Texas until she reached school age and "then she would live in Friendswood and go[ ] to school in Friendswood."
At the close of the hearing, the trial court stated on the record, "[F]rom the evidence I've heard, the child has resided the vast majority of the time with both parents most of the time in Illinois." The trial court orally granted Nahorski's motion to transfer and stated that it would stay the proceedings in Texas. The trial court stated its intention to confer with the judge in Illinois,[2] and the court further stated, "I'm not going to dismiss the proceedings in this court unless and until it has been transferred to the court in Illinois."
D. Post-Hearing Actions
On August 7, 2017, the trial court signed an order granting Nahorski's motion to transfer and denying Meekins' motion to strike. The trial court transferred the case to Cook County, Illinois, but ordered that Nahorski's motion to modify "be stayed pending a decision by the Court in Illinois to accept or reject jurisdiction of the case." Meekins requested that the trial court file findings of fact and conclusions of law, but the trial court did not do so.
Although proceedings in the trial court were stayed, Meekins also filed, on August 7, 2017, a "Motion for Enforcement of Possession or Access and Order to Appear." Meekins alleged that Nahorski had failed to comply with the original decree by failing to return C.G.M.-N. to Meekins on two occasions that month. Meekins requested that Nahorski be held in contempt for these violations. This motion was originally set for a hearing on August 17, 2017, but Meekins "passed" the motion due to lack of service on Nahorski.[3] On August 21, 2017, Meekins filed a motion for the trial court to set a hearing on her motion for enforcement, requesting that the trial court reset this motion for a hearing. The trial court did not rule on this motion.
The next day, on August 22, 2017, Meekins filed a first amended motion for enforcement, alleging that Nahorski had violated the original decree on four separate occasions by refusing to return C.G.M.-N. to Meekins. Meekins again requested that Nahorski be held in contempt. Meekins filed a separate motion on the same day *737 requesting that the trial court set her first amended motion for enforcement for a hearing.
Two days later, on August 24, 2017, Meekins filed an amended motion for the court to set a hearing on her amended motion for enforcement, and she attached an affidavit in which she averred that Nahorski had been hiding and secreting C.G.M.-N., that Nahorski had admitted to local police officers in Illinois that he was keeping C.G.M.-N. in violation of the trial court's orders, that Meekins had not seen C.G.M.-N. in over twenty days, and that C.G.M.-N. had missed her first few days of school in Friendswood. Meekins further averred, "I have filed a motion for enforcement in this Court and have been unable to obtain a new hearing date for this action." The trial court did not rule on Meekins' first amended motion for enforcement.
This mandamus proceeding followed.
Mandamus Standard of Review
Generally, to be entitled to mandamus relief, the relator must demonstrate that the trial court abused its discretion and that she has no adequate remedy by appeal. See In re J.B. Hunt Transp., Inc. , 492 S.W.3d 287, 299 (Tex. 2016) (orig. proceeding); Walker v. Packer , 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without regard to guiding legal principles. In re J.B. Hunt Transp. , 492 S.W.3d at 293-94 (quoting Bocquet v. Herring , 972 S.W.2d 19, 21 (Tex. 1998) ). A trial court has no discretion in determining what the law is or in applying the law to the facts. Id. (quoting Walker , 827 S.W.2d at 840 ). Thus, the trial court's failure to analyze or apply the law correctly constitutes an abuse of discretion. In re Nationwide Ins. Co. of Am. , 494 S.W.3d 708, 712 (Tex. 2016) (orig. proceeding).
Transfer Under UCCJEA
In her third and fourth issues, Meekins contends that the trial court abused its discretion by transferring the child custody modification proceedings to Illinois in violation of the UCCJEA. Specifically, Meekins argues that the trial court retained continuing, exclusive jurisdiction after making its initial child custody determination because Meekins and C.G.M.-N. have a significant connection to Texas.
A. Applicable Law
The UCCJEA, Texas Family Code Chapter 152, "was designed, in large part, to clarify and to unify the standards for courts' continuing and modification jurisdiction in interstate child-custody matters." In re Forlenza , 140 S.W.3d 373, 374 (Tex. 2004) (orig. proceeding).
Section 152.201(a) provides that a Texas court has jurisdiction to make an initial child custody determination in the following four instances:
(1) this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
(2) a court of another state does not have jurisdiction under Subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 152.207 or 152.208, and:
(A) the child and the child's parents, or the child and at least one parent or a person acting as a *738 parent, have a significant connection with this state other than mere physical presence; and
(B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;
(3) all courts having jurisdiction under Subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 152.207 or 152.208; or
(4) no court of any other state would have jurisdiction under the criteria specified in Subdivision (1), (2), or (3).
TEX. FAM. CODE ANN. § 152.201(a) (West 2014).
The UCCJEA defines "home state" as "the state in which a child lived with a parent ... for at least six consecutive months immediately before the commencement of a child custody proceeding" and provides that "[a] period of temporary absence of a parent ... is part of the period." Id. § 152.102(7) (West 2014). The UCCJEA "prioritizes home-state jurisdiction." Powell v. Stover , 165 S.W.3d 322, 325 (Tex. 2005). In determining home-state jurisdiction, the trial court must consider the child's physical presence in a state. Id. at 328.
Section 152.202 addresses a Texas court's continuing jurisdiction over child-custody matters after the making of an initial determination. It provides:
(a) Except as otherwise provided in Section 152.204 [governing temporary emergency jurisdiction], a court of this state which has made a child custody determination consistent with Section 152.201 or 152.203 has exclusive continuing jurisdiction over the determination until:
(1) a court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent, have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or
(2) a court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.
(b) A court of this state which has made a child custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under Section 152.201.
TEX. FAM. CODE ANN. § 152.202 (West 2014).
"[T]he court that makes the initial 'child custody determination' generally retains exclusive continuing jurisdiction over ongoing custody disputes." In re S.J.A. , 272 S.W.3d 678, 682 (Tex. App.-Dallas 2008, no pet.). A Texas court thus "acquires exclusive continuing jurisdiction by virtue of a prior child-custody determination," and the court "retains exclusive continuing jurisdiction until it determines that the significant connection and substantial-evidence requirements are no longer met." In re Forlenza , 140 S.W.3d at 376 (emphasis in original). The UCCJEA "does not premise the exclusive continuing jurisdiction determination on which state has the most significant connection with the child." Id. at 378 (emphasis in original). Texas retains exclusive jurisdiction "as long as a significant connection [with Texas] exists or substantial evidence [concerning the child's care, protection, training, *739 and personal relationships] is present" in Texas. Id. at 379 (emphasis in original).
The UCCJEA also contains provisions allowing a Texas court that has exclusive continuing jurisdiction to decline to exercise its jurisdiction if "it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." TEX. FAM. CODE ANN. § 152.207(a) (West 2014). The Texas court "shall consider whether it is appropriate for a court of another state to exercise jurisdiction," and in doing so, it "shall consider all relevant factors," including:
(1) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;
(2) the length of time the child has resided outside this state;
(3) the distance between the court in this state and the court in the state that would assume jurisdiction;
(4) the relative financial circumstances of the parties;
(5) any agreement of the parties as to which state should assume jurisdiction;
(6) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;
(7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and
(8) the familiarity of the court of each state with the facts and issues in the pending litigation.
Id. § 152.207(b). If the Texas court determines that it is an inconvenient forum and the court of another state is a more appropriate forum, the Texas court "shall stay the proceedings upon condition that a child custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper." Id. § 152.207(c).
B. Analysis
1. Initial child custody determination
At the July 6, 2017 de novo hearing on Nahorski's motion to transfer, Nahorski's counsel raised, for the first time, the argument that the trial court never obtained exclusive continuing jurisdiction in this case because Texas was not C.G.M.-N.'s home state at the time the trial court rendered the November 18, 2013 order. Because this argument implicates the trial court's subject-matter jurisdiction, we first address whether Texas had jurisdiction to make an initial child-custody determination on November 18, 2013.[4] See In re A.C.S. , 157 S.W.3d 9, 15 (Tex. App.-Waco 2004, no pet.) ("[S]ubject matter jurisdiction under the UCCJEA cannot be waived and may be raised for the first time on appeal.").
The UCCJEA defines "home state" as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." TEX. FAM. CODE ANN. § 152.102(7). The UCCJEA further provides *740 that "[a] period of temporary absence of a parent ... is part of the period." Id.
Although the original decree is part of the mandamus record, the parties' pleadings from that proceeding are not, and the parties disagreed over when Meekins filed her initial SAPCR seeking custody and support determinations. Nahorski testified that Meekins filed her petition in April 2013, while Meekins testified that she filed suit in "early 2013," but she did not state a specific time. The parties also disagreed about the state in which C.G.M.-N. lived in the six months preceding the filing of the SAPCR. Nahorski testified that while C.G.M.-N. was born in Texas in September 2011, she moved, with Meekins and him, to Illinois in November 2011, and, although she occasionally returned to Texas, she never spent extended time in Texas, always spending more days per month in Illinois rather than Texas. Meekins testified that she purchased a house in Friendswood in 2012 and that both she and C.G.M.-N. lived in this house together. She specifically testified that C.G.M.-N. lived in Texas for the six months preceding her filing of the SAPCR.
The trial court therefore had conflicting evidence before it concerning the state in which C.G.M.-N. was living in the six months preceding the filing of the original SAPCR. See Univ. of Tex. v. Poindexter , 306 S.W.3d 798, 806 (Tex. App.-Austin 2009, no pet.) (stating that when jurisdictional issue does not implicate merits of case and facts are disputed, court must make necessary fact findings to resolve jurisdictional issue) (citing Tex. Dep't of Parks & Wildlife v. Miranda , 133 S.W.3d 217, 226 (Tex. 2004) ). We note that, at the time the trial court orally ruled on Nahorski's motion to transfer at the close of the hearing, the trial court did not make a finding concerning whether it had jurisdiction to make the initial child custody determination in November 2013, nor did it dismiss the proceedings for lack of subject-matter jurisdiction. Instead, the trial court stayed the proceedings pending a decision by the Illinois court to accept jurisdiction, implying that the trial court concluded that it did have jurisdiction to make the initial child custody determination in 2013 and that it contemplated that the Illinois court might not accept jurisdiction over the case upon receipt of the transfer order, in which case the trial court would then hear the merits of Nahorski's modification petition.[5]
The mandamus record does not reflect that the trial court dismissed the case on the basis that it never acquired jurisdiction under the UCCJEA because Texas was not C.G.M.-N.'s home state at the time of the original SAPCR. Instead, the record supports the trial court's implied determination that it had jurisdiction under the UCCJEA but that Illinois was a more appropriate forum for the modification proceeding. Evidence in the mandamus record supports this implied determination. See In re Drake , 195 S.W.3d 232, 235 (Tex. App.-San Antonio 2006, orig. proceeding) ("An appellate court may not reconcile disputed factual matters in a mandamus proceeding.").
2. Whether trial court retains exclusive continuing jurisdiction
Texas Family Code section 152.201 sets out specific instances in which a court has jurisdiction to make an initial child custody determination, including when Texas is the home state of the child on the *741 date the custody proceeding commences. TEX. FAM. CODE ANN. § 152.201(a). A Texas court that has made a child custody determination consistent with section 152.201 has exclusive continuing jurisdiction over the custody determination until (1) the Texas court determines that neither the child nor the child and one parent has a significant connection with Texas and substantial evidence is no longer available in Texas concerning the child's "care, protection, training, and personal relationships"; or (2) a court determines that the child and the child's parents do not presently reside in Texas. Id. § 152.202(a). Meekins contends that, to the extent the trial court found that that it does not retain exclusive continuing jurisdiction over this case, this determination was erroneous because she and C.G.M.-N. have a significant connection with Texas.
In In re Forlenza , the Texas Supreme Court, in determining whether children maintained a significant connection to Texas despite having lived out-of-state for several years, considered the children's visitation within the state of Texas as well as the children's relationship with their mother, the non-custodial parent, who lived in Texas. See 140 S.W.3d at 376-77 ; see also In re Isquierdo , 426 S.W.3d 128, 132-33 (Tex. App.-Houston [1st Dist.] 2012, orig. proceeding) (considering same factors in concluding that children did not have significant connection with Texas). Here, Meekins presented evidence that she resided in Texas: she testified that she owned a home in Friendswood and a condominium on Galveston Island, she worked for a Houston-based company, she had a Texas driver's license, she was registered to vote in Texas, her homestead was in Texas, and her extended family was in Texas.
Moreover, it is undisputed that C.G.M.-N. spent time with Meekins in Texas. Nahorski maintained calendars from December 2013 through the time he filed the modification proceeding in March 2017, and these calendars reflected that C.G.M.-N. spent at least a couple of days per month with Meekins in Texas and more time during holidays. The calendars also reflected that C.G.M.-N. usually spent time with Meekins each weekend, sometimes traveling to Texas, sometimes traveling to areas in the Midwest, and sometimes staying in Chicago. Thus, even Nahorski's evidence demonstrates both that C.G.M.-N. visited Texas with Meekins and that Meekins maintained a significant relationship with C.G.M.-N. See In re Forlenza , 140 S.W.3d at 377 ; In re A.C.S. , 157 S.W.3d at 16 ("Visitation within the state is generally considered as evidence of a significant connection, particularly when the children maintain a relationship with relatives in the state other than the noncustodial parent.").
The mandamus record therefore reflects that, although C.G.M.-N. spent large amounts of time in Illinois, she still had a significant connection with Texas. As a result, under section 152.202(a)(1), Texas retained exclusive continuing jurisdiction over the child custody determination. See TEX. FAM. CODE ANN. § 152.202(a)(1) ; In re Forlenza , 140 S.W.3d at 377.
3. Whether Texas is an inconvenient forum
A Texas court that has exclusive continuing jurisdiction to make a custody determination may decline to exercise its jurisdiction if it "determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." TEX. FAM. CODE ANN. § 152.207(a) ; Powell , 165 S.W.3d at 327 ; Lesem v. Mouradian , 445 S.W.3d 366, 372 (Tex. App.-Houston [1st Dist.] 2013, no pet.). Section 152.207(b) lists eight non-exclusive factors that the Texas court *742 should consider in determining whether it is an inconvenient forum.[6] See TEX. FAM. CODE ANN. § 152.207(b) ; In re T.B. , 497 S.W.3d 640, 646 (Tex. App.-Fort Worth 2016, pet. denied) (stating that list of factors in section 152.207(b) is not exclusive).
Here, the parties agree that C.G.M.-N. was born in Texas in September 2011 and moved to Illinois in November 2011. The parties presented conflicting evidence concerning how much time C.G.M.-N. spent in the respective states from November 2011 until the time Nahorski filed the modification proceeding in March 2017. Nahorski testified that after C.G.M.-N. moved to Illinois in November 2011, although she visited Texas, she did not spend any extended periods of time in Texas. Meekins, on the other hand, testified that she purchased a house in Friendswood in 2012 and moved there with C.G.M.-N., although she and C.G.M.-N. continued to travel to Illinois frequently for Meekins' job. Meekins characterized C.G.M.-N.'s residence as in Texas. Nahorski presented calendars on which he made daily notations concerning which parent C.G.M.-N. stayed with and where she was. These calendars reflected that C.G.M.-N. spent at least a few days each month in Texas with Meekins, with more time spent in Texas over the holidays, and she spent most of her time in Illinois, either with Nahorski and his parents or at Meekins' apartment in Chicago.
Nahorski estimated that C.G.M.-N. spent 85% percent of her time in Illinois and 15% in Texas. Meekins estimated that C.G.M.-N.'s time split was closer to 55% in Illinois, 45% in Texas. Regardless of the exact percentage of time C.G.M.-N. spent in the two states, the evidence reflects that C.G.M.-N., who was five at the time of the hearing and just about to start kindergarten, spent significant amounts of time in Illinois, which included attending preschool four days per week, dance classes, and numerous doctor and dental appointments. Nahorski also presented evidence that Meekins had suggested that they look into a specific school in Chicago for C.G.M.-N. to attend kindergarten, implying that Meekins intended for C.G.M.-N. to remain in Illinois for longer, but Meekins testified that she was no longer considering those plans in light of Nahorski's modification suit.
Houston and Chicago are approximately one thousand miles apart, which would require lengthy travel by Nahorski to attend proceedings in Texas. See In re T.B. , 497 S.W.3d at 648 (noting that distance between Texas and Florida is over one thousand miles, which would require "lengthy travel" by mother and children living in Texas to present testimony in SAPCR proceeding in Florida). Although the travel distance to Illinois would also be lengthy for Meekins, Meekins routinely travels to the Midwest for her job, and the parties presented testimony that Meekins' annual income is significantly higher than Nahorski's, such that travel would cause a lesser financial burden on her.
The parties did not specify the evidence that would be required to resolve the pending modification proceeding, such as who each party anticipated calling as witnesses and what documentary evidence would be relevant to the determination.
*743 See TEX. FAM. CODE ANN. § 152.207(b)(6) (providing that trial court should consider "the nature and location of the evidence required to resolve the pending litigation, including testimony of the child"). Nahorski pointed out, however, that C.G.M.-N. attended preschool in Illinois, her regular doctor and dentist were in Illinois, and he and his parents lived in Illinois, while Meekins' family lived in Texas. To the extent the testimony of these individuals would be necessary in the modification proceeding, many of the relevant witnesses reside in Illinois.
The final section 152.207(b) factor is "the familiarity of the court of each state with the facts and issues in the pending litigation." Id. § 152.207(b)(8). The trial court made the initial child custody determination in the original decree, but the original decree also stated that it was an "agreed order," and the record does not reflect how extensive the proceedings were before the trial court in the original SAPCR. Meanwhile, although Nahorski's counsel represented that a proceeding had been filed in Illinois, Meekins' counsel represented that Meekins had not been served in that proceeding, and there is no evidence in the record of the Illinois court's familiarity with this case or what actions, if any, had been taken by the Illinois court.
The parties presented conflicting evidence concerning whether Texas was an inconvenient forum and Illinois was a more appropriate forum. The trial court, in granting Nahorski's motion to transfer and staying the proceedings in its court until the Illinois court accepted jurisdiction, impliedly found that Texas was an inconvenient forum and that Illinois was a more appropriate forum to hear the modification proceedings. Based on the evidence presented in this mandamus record, we cannot conclude that the trial court reasonably could have reached only one conclusion-that Illinois was not a more convenient forum and that transfer there would be arbitrary and unreasonable. Thus, we cannot conclude that the trial court abused its discretion in making its determination and staying proceedings in its court pending the Illinois court's acceptance of jurisdiction. See In re Drake , 195 S.W.3d at 235 ("With respect to the resolution of factual issues or matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court unless the relator establishes that the trial court could reasonably have reached only one decision and that the trial court's decision was arbitrary and unreasonable. This burden is a heavy one. An abuse of discretion does not exist if the trial court bases its decision on conflicting evidence and some evidence supports the trial court's decision.") (internal citations omitted).
We overrule Meekins' third and fourth issues.[7]
Failure to Set Motion for Hearing
In her first issue, Meekins contends that the trial court abused its discretion by failing to set a hearing on her first amended motion "for enforcement of possession or access and order to appear," and she requests that we direct the trial *744 court to hold a hearing on her motion and to rule on it.
Here, the mandamus record reflects that on August 7, 2017, on the same date the trial court granted Nahorski's motion to transfer and stayed proceedings in its court, Meekins filed a "Motion for Enforcement of Possession or Access and Order to Appear," alleging that Nahorski had twice violated the visitation provisions of the original decree by failing to return C.G.M.-N. to her and requesting that the trial court hold him in contempt. The record also reflects that this motion was originally set for a hearing on August 17, 2017, the trial court coordinator informed the parties that the trial court would proceed with the hearing but neither Nahorski nor C.G.M.-N. would be required to appear, and Meekins ultimately "passed" the motion due to lack of service on Nahorski.
On August 21, 2017, Meekins filed a motion to set a hearing on her motion for enforcement, which requested that the trial court reset the motion for a hearing. The next day, Meekins filed a first amended motion for enforcement, alleging that Nahorski had violated the visitation provisions of the original decree on four occasions and again requesting that the trial court hold him in contempt. Meekins filed a separate motion that same day requesting that the trial court set a hearing on her first amended motion for enforcement. Two days later, on August 24, 2017, Meekins filed an amended motion requesting that the court set a hearing on her amended motion for enforcement, attaching an affidavit in which she averred that Nahorski was deliberately secreting C.G.M.-N. in violation of the original decree. She stated in this affidavit, "I have filed a motion for enforcement in this Court and have been unable to obtain a new hearing date for this action." The trial court did not rule on any of these motions.
Meekins requests that we issue a writ of mandamus directing the trial court to hold a hearing on her first amended motion for enforcement and to rule on the motion. On August 7, 2017, the trial court stayed all proceedings pending a decision by the Illinois court to accept or reject jurisdiction over the case, as it was required to do pursuant to Family Code section 152.207(c). See TEX. FAM. CODE ANN. § 152.207(c) ("If a court of this state determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, the court shall stay the proceedings upon condition that a child custody proceeding be promptly commenced in another designated state....") (emphasis added).
Meekins filed her first amended motion for enforcement on August 22, 2017, and a motion requesting that the court set a hearing on her motion on August 24, 2017, while the statutorily-mandated stay was in place. The general rule is that "a pleading filed during the pendency of a court-imposed stay must be considered ineffective for as long as the stay is in effect." In re Helena Chem. Co. , 286 S.W.3d 492, 497 (Tex. App.-Corpus Christi 2009, orig. proceeding) ; see also City of Houston v. Swinerton Builders, Inc. , 233 S.W.3d 4, 9 (Tex. App.-Houston [1st Dist.] 2007, no pet.) (holding that party's non-suit taken while trial court proceedings were automatically stayed pursuant to Civil Practice and Remedies Code section 51.014(b) while interlocutory appeal was pending was "without force"). Because the trial court had stayed its proceedings pursuant to section 152.207(c), the trial court did not abuse its discretion by failing to hold a hearing and rule on Meekins' first amended motion for enforcement, which was filed while the stay was in effect.
We overrule Meekins' first issue.
*745 Transfer Under UIFSA
In her second issue, Meekins contends the trial court erred by transferring the child support portion of the modification proceeding to Illinois, in violation of UIFSA.
A. Applicable Law
UIFSA, Texas Family Code Chapter 159, was enacted to "streamline and expedite interstate and intrastate enforcement of [child] support decrees." Lesem , 445 S.W.3d at 377 (quoting Cowan v. Moreno , 903 S.W.2d 119, 121 (Tex. App.-Austin 1995, no writ) ). Jurisdiction under UIFSA "rests upon the concept of continuing, exclusive jurisdiction to establish and modify the levels of child support due a particular child." In re T.L. , 316 S.W.3d 78, 83 (Tex. App.-Houston [14th Dist.] 2010, pet. denied) ; see Office of Att'y Gen. of Tex. v. Long , 401 S.W.3d 911, 913 (Tex. App.-Houston [14th Dist.] 2013, no pet.) (stating that purpose of UIFSA is to "maintain a 'one-order-at-a-time world,' ensuring that only a single controlling support order exists and is enforced consistently among the states"). Family Code section 159.205(a) provides:
(a) A tribunal of this state that has issued a child support order consistent with the law of this state has and shall exercise continuing, exclusive jurisdiction to modify its child support order if the order is the controlling order and:
(1) at the time of the filing of a request for modification this state is the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or
(2) even if this state is not the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued, the parties consent in a record or in open court that the tribunal of this state may continue to exercise jurisdiction to modify its order.
TEX. FAM. CODE ANN. § 159.205(a) (West Supp. 2017). Once a Texas court that has jurisdiction enters a support decree, that court is the only court entitled to modify the decree as long as the court retains continuing, exclusive jurisdiction. Lesem , 445 S.W.3d at 377 ; In re T.L. , 316 S.W.3d at 83. A court of another state may enforce the Texas support decree under UIFSA, but that court has no authority to modify the support decree so long as one of the parties remains in Texas, the issuing state. Lesem , 445 S.W.3d at 377 ; In re T.L. , 316 S.W.3d at 83 ; see Long , 401 S.W.3d at 913 ("A court retains its jurisdiction under UIFSA if at least one person affected by the decree still resides in the issuing state."). "Only if the issuing state no longer has a sufficient interest in the modification of its order may the responding state assume the power to modify it...." Lesem , 445 S.W.3d at 377 (quoting In re T.L. , 316 S.W.3d at 83 ).
Family Code section 159.205 provides two additional ways in which a Texas court that has issued a support decree may lose continuing, exclusive jurisdiction to modify the support order. Id. Section 159.205(b) provides:
(b) A tribunal of this state that has issued a child support order consistent with the law of this state may not exercise continuing, exclusive jurisdiction to modify the order if:
(1) all of the parties who are individuals file consent in a record with the tribunal of this state that a tribunal of another state that has jurisdiction over at least one of the parties who is an individual or that is located in the state of *746 residence of the child may modify the order and assume continuing, exclusive jurisdiction; or
(2) the tribunal's order is not the controlling order.
TEX. FAM. CODE ANN. § 159.205(b) ; see Lesem , 445 S.W.3d at 377-78 (stating that, for Texas to lose its continuing, exclusive jurisdiction under section 159.205(b), both obligor and obligee parent must consent, in record filed with Texas court, that court of another state may modify order and assume continuing, exclusive jurisdiction). Section 159.205(c) provides that a Texas court shall recognize the continuing, exclusive jurisdiction of a court in another state if that court "has issued a child support order pursuant to the [UIFSA] or a law substantially similar to that Act that modifies a child support order of a tribunal of [Texas]." TEX. FAM. CODE ANN. § 159.205(c). Unlike the UCCJEA, UIFSA "provides no mechanism for the issuing tribunal ... to decline to exercise its continuing, exclusive jurisdiction and transfer jurisdiction to modify a support order to a court in another state." Lesem , 445 S.W.3d at 378.
B. Analysis
As we have already held, Texas was C.G.M.-N.'s home state at the time the trial court entered the original decree in November 2013, and therefore the court had jurisdiction to enter that order. Among other things, the original decree obligated Nahorski-the obligor parent-to pay monthly child support to Meekins-the obligee parent-for C.G.M.-N.'s benefit. Thus, under UIFSA, once the trial court entered the support decree, that court becomes the only court entitled to modify the decree as long as the court retained continuing, exclusive jurisdiction. Id. at 377.
The trial court retains continuing, exclusive jurisdiction to modify the support portion of the original decree if that order was the controlling order and, at the time of the filing of the request for modification, Texas was the residence of the obligor, the obligee, or the child. See TEX. FAM. CODE ANN. § 159.205(a) ; Lesem , 445 S.W.3d at 377. The mandamus record reflects that although Meekins leased an apartment in Chicago from May 2014 through June 2017, she also owned a house in Friendswood, Texas, and a condominium in Galveston. Meekins presented evidence that she worked for a Houston-based company, that she was registered to vote in Galveston County, and that her homestead was located in Galveston County. She also presented the testimony of two of her friends that they had seen Meekins and C.G.M.-N. at the Friendswood house on multiple occasions within the past year. Meekins thus presented evidence that Texas is the state of her residence and that she is the obligee under the original decree. See Lesem , 445 S.W.3d at 377 (stating that court of another state may enforce Texas support decree under UIFSA, but that court may not modify support decree so long as one of parties to decree remains in Texas).
Family Code section 159.205 sets out two additional ways in which a Texas court may lose continuing exclusive jurisdiction under UIFSA to modify a child support order, but neither of those is applicable in this case. Section 159.205(b) provides that a Texas court may not exercise continuing, exclusive jurisdiction to modify a support order if the obligor and obligee consent, in a record filed with the Texas court, that a court of another state with jurisdiction over at least one of the parties, or a court located in the state of residence of the child, may assume continuing, exclusive jurisdiction and modify the Texas court's *747 order.[8] TEX. FAM. CODE ANN. § 159.205(b)(1) ; Lesem , 445 S.W.3d at 377. Throughout the course of the modification proceedings, Meekins has challenged Nahorski's attempts to have the case transferred to Illinois. The mandamus record contains no evidence that she has consented to Illinois assuming jurisdiction over this proceeding. Thus, the trial court has not lost continuing, exclusive jurisdiction pursuant to this section. See TEX. FAM. CODE ANN. § 159.205(b)(1) ; Lesem , 445 S.W.3d at 377-78 (holding that because father, who resided in Texas, had resisted court's efforts to transfer proceedings to Florida, father did not consent to Florida assuming jurisdiction over proceeding).
Section 159.205(c) provides that a Texas court shall recognize the continuing, exclusive jurisdiction of another state if a court of that state has issued a child support order pursuant to UIFSA or a substantially similar law that modifies a child support order of a Texas court. TEX. FAM. CODE ANN. § 159.205(c). The record in this case does not reflect that Illinois has issued a child support order modifying the original decree. Thus, the trial court has not lost continuing, exclusive jurisdiction pursuant to this section either. See id. ; Lesem , 445 S.W.3d at 378 (noting that record did not demonstrate that Florida had issued order modifying prior child support order of Texas court).
As this Court previously noted in Lesem , UIFSA, unlike the UCCJEA, provides no mechanism for the issuing tribunal of a support order to decline to exercise its continuing, exclusive jurisdiction and transfer jurisdiction to modify a support order to a court in another state. See 445 S.W.3d at 378. Meekins, the obligee parent under the original decree, presented evidence that she continues to reside in Texas. As a result, because one party to the original decree remains in Texas and no other state has issued a child support order pursuant to UIFSA, Texas, as the issuing state of the controlling child support order, retains continuing, exclusive jurisdiction "and may not divest itself of jurisdiction and transfer the support modification proceeding" to Illinois. See ids="6906111" index="58" url="https://cite.case.law/sw3d/445/366/#p372">id. ; In re T.L. , 316 S.W.3d at 83 ("Once a court having jurisdiction enters a support decree, that tribunal is the only one entitled to modify the decree so long as that tribunal retains continuing, exclusive jurisdiction under the UIFSA."). We therefore hold that the trial court erroneously transferred the child support portion of Nahorski's modification proceeding to the Illinois court.
We sustain Meekins' second issue.[9]
*748 Conclusion
We conditionally grant Meekins' petition for writ of mandamus in part and order the trial court to vacate its August 7, 2017 transfer order to the extent that it transferred the child support portion of the modification proceeding to the Illinois court. We deny the remainder of Meekins' petition for writ of mandamus. The writ will only issue if the trial court fails to comply.

The underlying case is In the Interest of C.G.M.-N. , cause number 12FD3066, pending in the County Court at Law No. 1 of Galveston County, Texas, the Hon. John Grady presiding.

The mandamus record does not include pleadings from a pending case in Illinois, but Nahorski's counsel represented at the July 6, 2017 hearing that Nahorski had filed a petition in Illinois. Meekins' counsel stated that Meekins had not been served with notice of that proceeding. On August 15, 2017, Nahorski filed a motion for the trial court and the court in Illinois to confer concerning the proper venue for the proceedings. The record does not indicate whether action was taken on this motion.

The mandamus record includes e-mail correspondence between Nahorski's counsel and the trial court coordinator in the underlying suit with respect to this hearing date on August 17. The court coordinator stated that Galveston County "Judge Grady will go forward with the hearing, but [neither] the child nor the father will be required to appear."

We note that Nahorski, in numerous filings in the trial court, stated that the trial court had "continuing, exclusive jurisdiction" over this case as a result of prior proceedings. To the extent these statements can be construed as judicial admissions, we further note that subject-matter jurisdiction cannot be conferred by agreement or estoppel, nor can it be conferred by judicial admission. See In re A.C.S. , 157 S.W.3d 9, 15 (Tex. App.-Waco 2004, no pet.).

In announcing its ruling, the trial court also stated, "[T]he custody issue will be [decided] either here or in Illinois."

In this case, no evidence was presented concerning the first factor under section 152.207(b) -whether domestic violence has occurred and is likely to continue in the future; the fifth factor-any agreement of the parties as to which state should assume jurisdiction; or the seventh factor-the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence. See Tex. Fam. Code Ann. § 152.207(b)(1), (5), (7) (West 2014).

Meekins argues that Nahorski engaged in "unjustifiable conduct" and that, as a result, this Court should reject his attempt to have the case transferred to Illinois. See Tex. Fam. Code Ann. § 152.208(a) (West 2014) (providing that if Texas court has jurisdiction under UCCJEA because party invoking court's jurisdiction has engaged in "unjustifiable conduct," court generally shall decline to exercise its jurisdiction). Meekins, however, did not present this argument to the trial court, and we therefore decline to grant mandamus relief on this basis.

Section 159.205(b) also provides that a Texas court that has issued a support order may not exercise continuing, exclusive jurisdiction to modify the order if that order is not the controlling order. Tex. Fam. Code Ann. § 159.205(b)(2) (West Supp. 2017). Here, Nahorski has not argued that the Texas support order-the original decree signed in November 2013-is not the controlling support order.

Courts, including this court, have recognized that, because UIFSA and the UCCJEA have "separate and independent jurisdictional requirements," occasionally situations arise in which the child custody portion of a modification proceeding is transferred to another state pursuant to the UCCJEA, while the child support portion must remain in Texas pursuant to UIFSA. See, e.g. , Lesem v. Mouradian , 445 S.W.3d 366, 378 n.4 (Tex. App.-Houston [1st Dist.] 2013, no pet.) ; see also In re V.L.C. , 225 S.W.3d 221, 226 (Tex. App.-El Paso 2006, orig. proceeding) (noting that UCCJEA and UIFSA have "separate and independent jurisdictional requirements"). As the Waco Court of Appeals has noted, by enacting UIFSA and the UCCJEA, the Legislature has created "an unsatisfactory situation in which a suit affecting a parent-child relationship is severed into parallel proceedings in different states," but "any remedy for this awkward result must come from the legislature, not the courts." In re Hattenbach , 999 S.W.2d 636, 639 (Tex. App.-Waco 1999, orig. proceeding).